LIONEL A. GRISE, JR. vs. FRANCIS H. WHITE.

Norfolk.    March 7, 1969. — April 16, 1969.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, &
KIRK, JJ.

*Assignment. Subordination. Attachment.*

Where it appeared that one for value assigned a claim against a debtor,
that later the claim was attached in an action commenced by trustee
process against the assignor by a plaintiff who had actual notice of
the assignment, and that the assignee subsequently assigned the claim
to a new assignee for value, the new assignee was entitled to the
priority over the plaintiff in the funds in the trustee's hands which the
first assignee had enjoyed.  [702]

Subordination agreements discussed.  [702–705]

Where it appeared that, after a claim had been assigned, it was attached
in an action brought by trustee process against the assignor by a
plaintiff having actual notice of the assignment, that subsequently the
assignee assigned the claim to a second assignee, that thereafter the
first assignor assigned the claim to a third assignee, that the second
assignee then made an agreement subordinating his interest in the
claim to that of the third assignee, and that indebtedness of the first
assignor to the second assignee, and also indebtedness of the first
assignor to the third assignee, on account of which the second and
third assignees, respectively, received their assignments, were each
greater than the amount in the trustee's hands, it was held that the
third assignee was entitled to the whole of that amount.  [705–706]

CONTRACT.   Writ in trustee process in the Superior Court
dated September 23, 1963.

Following the decision of this court reported in 351 Mass.
427, the plaintiff alleged exceptions to certain rulings by
*Taveira*, J., and an order by him that a sum in the hands of
the trustee be paid to Dennis Acceptance Company.

*Stuart DeBard* for the plaintiff.

*Allen Goodman* (*Michael H. Rudy* with him) for Dennis
Acceptance Company.

CUTTER, J.   This case is a further stage in the proceeding
by trustee process before this court in *Grise* v. *White*, 351

Mass. 427. This court there sustained exceptions to an order discharging as trustee Universal Underwriters Insurance Company (Universal) which owed White an amount determined as a consequence of our decision in *White* v. *Universal Underwriters Ins. Co.* 347 Mass. 367. The case is before us, as it was before the trial judge, on a statement of agreed facts and two stipulations (in part about what "may be considered as evidence"). The trial judge decided that Dennis Acceptance Company (Dennis) was entitled to $14,995 in the hands of Universal as trustee in the circumstances stated below. Grise presents for our consideration his exceptions to the judge's rulings and order upon Grise's motion to charge the trustee.

On July 29, 1963, White for value assigned to Albert M. Slater his claim in equity, or cause of action, against Universal. This assignment could be found to have been given to secure a note of White and others to Slater for $26,888.

Slater on August 5, 1964, assigned without recourse his interest in the assignment of this claim and another to Mr. Bernard V. Martin, attorney for Emil DiPlacido, to whom it could be found White already owed $66,000. It could be found also that Mr. Martin paid Slater $500 for this assignment. Slater also assigned his interest in (a) a note given to him by White and others; (b) a pledge agreement given to secure that note; and (c) in a security agreement given by Mathew J. Dailey & Company Inc. No financing statement under art. 9 of G. L. c. 106 (the Uniform Commercial Code), if one was required, was filed concerning White's assignment to Slater, or concerning Slater's assignment to Mr. Martin.

On May 27, 1964 (after the assignment to Slater and before Slater's assignment to Mr. Martin), Grise made an attachment, under a special precept, of White's claim against Universal. He then had actual notice of White's assignment to Slater.

On August 6, 1964, White made an assignment to Dennis of the same claim by him against Universal to secure the

payment of a note of $16,280, no part of which has been paid. This assignment from White to Dennis contains a covenant by White that he "has made no previous assignment of . . . [the claim] to any person."

On August 7, 1964, Mr. Martin executed a document entitled "Subordination Agreement," reciting that it was his "intention to subordinate any and all securities which I may have . . . [by the assignment from Slater to him] to any and all claims by Dennis."[1] Neither the claim of Slater nor that of Mr. Martin has gone to judgment.

Grise has a finding of $8,000 in his favor which can be satisfied only by charging Universal as trustee in this proceeding. As trustee Universal holds $14,995 for Grise, Dennis, or Mr. Martin, as they may be entitled, respectively, to collect this sum or any portion of it. The amount unpaid to Dennis by White and the amount owing by White to Mr. Martin (on the note assigned to him by Slater alone) are each in excess of the sum of $14,995 held by Universal as trustee.

On this state of facts two principal questions arise: (1) Did Slater effectively transfer to Mr. Martin his priority in the security interest under the assignment to him from White as against Grise, who had knowledge of the assignment to Slater? (2) Was the subordination agreement effective to permit Dennis to stand in Mr. Martin's shoes in collecting from the fund in Universal's hands the amount of Mr. Martin's subordinated assigned security interests? We, of course, had no occasion to consider in the earlier *Grise* case, 351 Mass. 427, 432, the matter of priorities among Slater, Mr. Martin, Grise, and Dennis.

---

[1] The subordination agreement reads in part: "The undersigned hereby subordinates all of its [*sic*] right, title, interest or lien interest in and to any of the aforementioned securities to any and all security interests which Dennis . . . may have on this date or at any time hereafter against the property, assets or choses-enaction [*sic*] of Francis H. White . . . [and others] whether arising out of a note dated August 6, 1964," for $16,280, or "security instruments executed currently therewith or whether arising out of any subsequent claims of . . . Dennis." Because Dennis's original claim of $16,280 exceeds the amount in the hands of Universal as trustee, we need not consider any problems of priority which might arise with respect to any claims of Dennis arising subsequent to White's assignment to him.

1. Apart from the Uniform Commercial Code, there can be no doubt that the assignment to Slater by White, for value, of his claim against the trustee, Universal, will prevail against Grise, a later attaching creditor. Grise in addition had knowledge of the assignment. See *Commercial Cas. Ins. Co.* v. *Murphy*, 282 Mass. 100, 104. See also *Aetna Cas. & Sur. Co.* v. *Harvard Trust Co.* 344 Mass. 160, 168; *McLaughlin* v. *New England Tel. & Tel. Co.* 345 Mass. 555, 563. There is no merit to the argument by Grise in his brief, based upon *White* v. *Coleman*, 127 Mass. 34, *S. C.* 130 Mass. 316, that the assignment from White to Slater never became effective. *White* v. *Coleman* dealt with a mere order, twice interpreted by this court not to constitute an assignment. Here Grise has agreed (and not by a mere stipulation as to evidence) that White "assigned a cause of action to . . . Slater on July 29, 1963, for value."

The Uniform Commercial Code, if applicable at all (see G. L. c. 106, § 9 – 104 [h], [k], but see § 9 – 106), a matter which we need not decide, does not change this result, even though no financing statement (see §§ 9 – 302, 9 – 303 [1]) was filed. Because of Grise's knowledge of the assignment by White to Slater, that assignment, even if not perfected, did not become subordinate to Grise's attachment. By § 9 – 301 (1), "an unperfected security interest is subordinate to the rights of . . . (b) a person who becomes a lien creditor *without knowledge* of the security interest and before it is perfected" (emphasis supplied).[2] See *Re Komfo Prod. Corp.* 247 F. Supp. 229, 233–236 (E. D. Pa.); *Gray* v. *Raper*, 115 Ga. App. 600, 601–602. Cf. *Bloom* v. *Hilty*, 427 Pa. 463, 468–471. Grise in his brief does not appear to make any contrary contention.

Under general principles the assignee (from a first assignee) of an assigned claim steps into the shoes of his assignor as to priorities. This has been held to be the situation as to a perfected security interest under the code, G. L. c. 106, § 9 – 302 (2), even if the later assignee makes no

---

[2] A "lien creditor," see § 9 – 301 (3) "means a creditor who has acquired a lien on the property involved by attachment . . . ."

new filing. *French Lumber Co. Inc.* v. *Commercial Realty & Fin. Co. Inc.* 346 Mass. 716, 719. Upon the present facts we think that the same result must be reached as to the unperfected interest of Mr. Martin in view of Grise's knowledge of the original unperfected interest of Slater. We hold that the new assignment (of White's claim against Universal) by Slater to Mr. Martin put Mr. Martin in the same position Slater was in as against Grise, whose attachment was subject to the original assignment.[3]

2. The subordination agreement (fn. 1) subordinated Mr. Martin's interest in the assignment from White to Slater to the interests of Dennis. The agreement did not in terms assign to Dennis the interests of Mr. Martin. The authorities cited later in this opinion show, however, that such agreements have generally been construed, at least where there is a limited fund available to satisfy multiple claimants, as in bankruptcy, as putting the holder of the claim thereby given priority (here Dennis) in the position of asserting (to the extent warranted in the particular circumstances) the same priority which the subordinator (here Mr. Martin) himself could have asserted.

The holder of the subordinated claim (here Mr. Martin) intends to relinquish his position only to and for the benefit of one creditor (or sometimes a class of creditors) of the common debtor. As against the rest of the world the subordinator obviously desires to preserve his priority position (see Coogan — Hogan — Vagts, Secured Transactions under U. C. C., § 23.08, p. 2386) and particularly against all other claims or interests junior to his. This is in order that, after there has been satisfied the interest (here that of Dennis) which has been given priority by the subordination agreement, the subordinator may assert his own claim (to the extent at least of its remaining priority). This result, in general, can be achieved by putting the holder of the in-

---

[3] Under the code, of course, if applicable at all, different questions might arise concerning Mr. Martin's rights as against creditors or subsequent assignees of Slater, if Mr. Martin did not perfect his interest under the assignment from Slater. See Uniform Commercial Code, 1962 Official Text, § 9–302 (2), comment 7.

terest (here Dennis) who is given new priority in the same position (to the extent of the subordination) which the subordinator (here Mr. Martin) had as against creditors having intermediate priority, such as Grise (or as against those of equal priority with the subordinator, apart from the subordination agreement).

Such questions concerning the distribution of limited funds among competing creditors most frequently arise in bankruptcy. The bankruptcy courts have generally given a broad effect to subordination agreements to accomplish the result they deem to have been intended by the parties. See e.g. *Matter of Credit Indus. Corp.* 366 F. 2d 402, 408–410 (2d Cir.), and authorities collected in 3A Collier, Bankruptcy (14th ed. and 1968 Suppl.) § 65.06; Gilmore, Security Interests in Personal Property, §§ 37.1–37.3; Coogan — Hogan — Vagts, Secured Transactions under U. C. C., §§ 23.01–23.02, 23.08. This has been done even in cases involving very simple subordination agreements. See e.g. *Re Dodge-Freedman Poultry Co.* 148 F. Supp. 647, 649–652 (D. N. H.), affd. 244 F. 2d 314 (1st Cir.). There F, president and principal stockholder of a debtor corporation, merely subordinated his claims against the debtor to the claims of D, another creditor of the debtor. F attempted to waive his claim to a dividend when the debtor's assets were being distributed in the bankruptcy court. The judge (pp. 650–651) rejected the contention that the subordination effected an equitable assignment of, or equitable lien upon, the dividend to which F would be entitled. He concluded, however, that the purpose of the subordination agreement was that D's claim should be paid, and held that F was under a duty (a) not to relinquish his claim to a dividend by waiver, and (b) to hold his dividend upon constructive trust for D. The referee's order that F's dividend (pp. 648–649) be paid to D was upheld.

The cases, recognizing that subordination agreements are to be given practical effect to bring about payment of the debt thereby given priority, proceed on different theories. See Gilmore, Security Interests in Personal

Property, § 37.2; Calligar, Subordination Agreements, 70 Yale L. J. 376, 383–392; Zinman, Under the Spreading U. C. C. — Subordinations and Article 9, 7 B. C. Ind. & Comm. L. Rev. 1, 10, 24–31. See also Everett, Subordinated Debt, 20 Business Lawyer 953, 960, 971–975. Whatever the theory advanced, these agreements have been construed consistently to afford to the debt or security interest thereby granted priority practical benefits (of asserting the claim of the subordinator against a fund being liquidated) far beyond a mere undertaking of the subordinator to stand aside and not to compete for a limited fund until the new priority claim has been satisfied. This result of the court decisions has been so uniform as to afford basis for treating any subordination agreement as having like effect, as a matter of interpretation in a contract of the term "subordination." The subordination agreement before us, we think, is to be interpreted as intended to permit Dennis to assert the priority of Mr. Martin as against Grise to the extent of Mr. Martin's subordinated priority or Dennis's claim, whichever is the smaller.

A situation of this very type, arising from a contractual subordination, is discussed in Gilmore, Security Interests in Personal Property, § 39.1, p. 1021. The author says, "To start with, A, B, and C [who occupy the same relative priorities as Mr. Martin, Grise, and Dennis in the present case] have claims against [the] debtor . . . [here White and the fund in Universal's hands] which are entitled to priority in alphabetical order . . . . A subordinates his claim to C's. . . . [T]he . . . fund [here in Universal's hands] is insufficient to satisfy all three claims. There is a comforting unanimity, among courts and commentators, on the proper distribution of the fund: 1. Set aside from the fund the amount of A's claim. 2. Pay the amount so set aside . . . (a) [to] C, to the amount of his claim; (b) [to] A, to the extent of any balance remaining after C's claim is satisfied. 3. Pay B the amount of the fund remaining after A's claim has been set aside. 4. If any balance remains in the fund after A's claim has been set aside and B's claim

has been satisfied, distribute the balance to (a) C, (b) A."[4]

We, of course, have no occasion here to consider the problem beyond step 2 (a) in the preceding quotation, and do not do so. Dennis's claim and Mr. Martin's security interest which is subordinated to Dennis's claim, each is larger than the amount in Universal's hands. The rule just stated, to the extent that we need apply it, is supported by the results of the following authorities. See *Wayne Intl. Bldg. & Loan Assn.* v. *Moats*, 149 Ind. 123, 130–131; *Malmgren* v. *Phinney*, 50 Minn. 457, 464–465. See also *Schill* v. *Korthof*, 147 Minn. 443, 445; *Fidelity Union Title & Guar. Co.* v. *Magnifico*, 106 N. J. Eq. 559, 563–564. Somewhat analogous Federal cases reach a generally consistent result. See *California State Dept. of Employment* v. *United States*, 210 F. 2d 242, 243–245 (9th Cir.); *Exchange Bank & Trust Co.* v. *Tubbs Mfg. Co.* 246 F. 2d 141, 143–144 (5th Cir.), cert. den. 355 U. S. 868; *Jordan* v. *Hamlett*, 312 F. 2d 121, 123–125 (5th Cir.).[5]

3. The agreed facts and stipulations adequately establish (for the purposes of this trustee process) the facts upon which Dennis relies to establish its claim to the fund in the hands of Universal as trustee. This record does not establish that Dennis still has, even if it once had, other collateral to apply to its claim against White. There thus is no basis, in this action at law, for requiring Dennis, under the equi-

[4] Professor Gilmore proceeds: "Thus C, by virtue of the subordination agreement, is paid first, but only to the amount of A's claim, to which B was in any event junior. B receives what he had expected to receive: the fund less A's prior claim. If A's claim is smaller than C's, C will collect the balance of his claim, in his own right, only after B has been paid in full. A, the subordinator, receives nothing until B and C have been paid except to the extent that his claim, entitled to first priority, exceeds the amount of C's claim, which, under his agreement, is to be first paid."

[5] General Laws c. 106, § 9 – 316, reads, "Nothing in this Article prevents subordination by agreement by any person entitled to priority." There is no occasion to deal with the question, much discussed by the commentators cited above, whether art. 9 of the Uniform Commercial Code applies to subordination agreements as creating security interests. If it does, creditors of Mr. Martin could take advantage of the failure of Dennis to perfect its security interest. The present record shows no creditors of Mr. Martin asserting any claim that Dennis should have perfected its security interest. Grise is not in a position to assert such a claim. See the similar possibility discussed in fn. 3, *supra;* and Gilmore, op. cit. § 37.3, p. 995.

·table doctrine of marshalling (see *Broadway Natl. Bank* v. *Hayward,* 285 Mass. 459, 462–463; cf. *James Stewart & Co. Inc.* v. *National Shawmut Bank,* 291 Mass. 534, 556–557), to have resort first to other security. Cf. *Jordan* v. *Lavin,* 319 Mass. 362, 366.                          *Exceptions overruled.*