**In Re Earl E. SMITH and Joan C. Smith dba JES Farms, Debtors.**

**Bankruptcy No. 84–01528.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

July 24, 1987.

Verne K. Armstrong, Asst. U.S. Atty., Toledo, Ohio, for U.S.

Terry L. Gernert, Bucyrus, Ohio, for Farmers Citizens Bank.

David C. Barrett, Jr., Toledo, Ohio, for debtor-in-possession.

### MEMORANDUM OPINION
### AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after a Pre-Trial Conference as to the Manner of Distribution of $20,000.00 Fund held in Escrow at The Farmers Citizens Bank. At the Pre-Trial, the parties agreed that if they could not reach a settlement agreement, they would submit this matter to the Court on briefs. The parties, Farmers Home Administration (hereinafter "FmHA") and Farmers Citizens Bank (hereinafter "Bank"), have filed the arguments they wish the Court to consider in reaching its decision. The Court has reviewed the arguments, as well as the entire record in this case. Based on that review, and for the following reasons, the Court finds that FmHA should receive Thirteen Thousand One Hundred and Forty Dollars and Four Cents ($13,140.04) with the Bank receiving the balance of the funds held in escrow.

### FACTS

The facts, though somewhat sketchy, do not appear to be in serious dispute. Farm-

ers Citizens Bank had a perfected security interest in crop proceeds by virtue of a financing statement filed on June 26, 1980. At some time on or before May 28, 1982, FmHA and the Bank entered into the following subordination agreement:

> In consideration of a certain loan from the Farmers Home Administration to Earl E. & Joan C. Smith, Farmers Citizens Bank hereby subordinates its lien Crawford County Records Number 37104 up to the amount of $8,000.00 for a period of 7 years to the lien of said Farmers Home Administration, Norwalk, Ohio.

This agreement is only memorialized in a UCC–3 filed with the Crawford County Recorder.

A letter from the Bank to FmHA provides some clarification of the agreement:

June 7, 1982
U.S. Department of Agriculture
F.H.A.
PO Bldg.
Norwalk, Ohio 44857

Re: Mr. Earl Smith
Dear Greg,

As requested a subordination agreement was signed and executed by filing a UCC–3 with the Crawford County Recorder on 5–28–82 and showing a filing number of 37104.

In drafting the subordination agreement the statement "up to the amount of $8,000.00 for a period of 7 years" was used to describe the amount of our subordination of FmHA. This statement refers to the annual payment of $8,000.00 due each year for a period of 7 years, and not the total amount due to FmHA over the 7 year period.

If you have any questions regarding this matter, please do not hesitate to phone or write.

Respectfully yours,
/s/ Robert L. Morton
Robert L. Morton
Vice President

In 1982 and 1983, FmHA did not receive any crop proceeds from the Debtor-In-Possession, nor did they take any action to obtain crop proceeds. The Debtor-In-Possession initiated an action contesting the validity of the Bank's security interest covering the Debtor's crops and crop proceeds. *See, In re Smith*, 47 B.R. 482 (Bankr.N.D. Ohio 1985). This Court found the Bank's security interest to be valid and Ordered the 1984 crops and crop proceeds to be held by the Debtors until further Order of the Court.

The crops were subsequently sold, and the funds placed in escrow pending the determination of the rights of the Bank and FmHA. The parties do not dispute that the subordination agreement gives FmHA the right to at least Eight Thousand Dollars ($8,000.00) of the 1984 crop proceeds. The issue before the Court is whether the subordinated amounts for 1982 and 1983 should accumulate and give FmHA rights to the entire escrow fund.

## LAW

### I

11 U.S.C. § 510(a) states:

> (a) A subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law.

O.R.C. § 1309.35, which corresponds to U.C.C. § 9–316, states:

> Nothing in sections 1309.01 to 1309.50, inclusive, of the Revised Code prevents subordination by agreement by any person entitled to priority.

While not preventing subordination agreements, the Uniform Commercial Code does not go on to provide any guidelines for the operation and effect of subordination agreements. The language of § 1309.35 does indicate that subordination can be undertaken by "agreement". The definition of "agreement" is found in O.R.C. § 1301.-01, which corresponds to U.C.C. § 1–201(3):

> (C) "Agreement" means the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance as provided in section 1301.11 and 1302.11 of the Revised Code. Whether

an agreement has legal consequences is determined by the provisions of Chapters 1301., 1302., 1303., 1304., 1305., 1306., 1307., 1308., and 1309. of the Revised Code, if applicable; otherwise by the law of contracts.

Courts have interpreted this section as allowing more informal types of agreements that do not "rise to the full dignity of a contract". These informal subordination agreements can still be given legal effect. *In re Bishop*, 52 B.R. 470 (Bankr.N.D.Ala. 1985).

## II

▮ In the present case, the Bank is a secured creditor and FmHA is an unsecured creditor. The subordination agreement allows FmHA to improve its position and receive crop proceeds ahead of other creditors. Although there has not been a great deal of litigation in this area, it appears that a subordination agreement between a secured creditor and an unsecured creditor may be given effect in the following manner. Under nonbankruptcy law, a subordination agreement may not adversely affect the rights of a creditor who is not a party to the agreement. *Pioneer-Cafeteria Feeds Ltd. v. Mack (In re Wyse)*, 340 F.2d 719, 723 (6th Cir.1965); *In re Henzler Mfg. Corp.*, 36 B.R. 303, 305 (Bankr.N.D. Ohio 1984); *see also,* Comment to Uniform Commercial Code § 9–316. Thus, under § 510(a) the subordination of a secured claim may not impair the rights of the other creditors. Essentially, this is accomplished by the exchange of priorities between the parties to the agreement. The amount to be paid to the party subordinating its claim (the Bank) is determined without reference to the subordination agreement. That amount is then paid to the beneficiary of the subordination agreement (FmHA) to the extent of its valid interest through the subordination agreement, with any remaining balance going to the subordinating creditor (the Bank). The subordinating creditor then receives a claim with the same priority enjoyed by the beneficiary of the agreement, to the extent of the amount paid to the beneficiary. *Grise v. White*, 355 Mass. 698, 247 N.E.2d 385

(1969); *In re Associated Gas & Electric Co.*, 53 F.Supp. 107 (S.D.N.Y.1943); Lopes, *Contractual Subordination and Bankruptcy*, 97 Banking L.J. 204, 205–206 (1980). Thus, the amount of claims against the Debtor, and the distribution to uninvolved creditors, remain unaffected.

## III

Four major theories have been set forth on the enforceability of subordination agreements:

1) The subordination agreement creates an equitable lien in favor of the senior creditor. *In re Geo. P. Schnizel & Son*, 16 F.2d 289 (S.D.N.Y.1926) (Hand, J.)

2) The subordination agreement creates an equitable assignment to the senior creditor of the subordinated debt claim in bankruptcy and dividends payable thereon. *In re Handy-Andy Community Stores, Inc.*, 2 F.Supp. 97 (W.D.La.1932).

3) The Subordinator holds the dividends received as constructive trustee for the holder of the senior debt. *Matter of Dodge-Freedman Poultry Co.*, 148 F.Supp. 647 (D.C.N.H.1956), *aff'd sub nom. Dodge-Freeman Poultry Co. v. Delaware Mills, Inc.*, 244 F.2d 314 (1st Cir.1957).

4) The bankruptcy court has the power to distribute the bankrupt estate in accord with the rights of the parties as fixed by their own contract. *Bird & Sons Sales Corp. v. Tobin*, 78 F.2d 371 (8th Cir.1935); *In re Aktiebolaget Kreuger & Toll*, 96 F.2d 768 (2d Cir.1938); *Bank of America Nat'l Trust & Sav. Ass'n v. Erickson*, 117 F.2d 796 (9th Cir.1941); *St. Louis Union Trust Co. v. Champion Shoe Mach. Co.*, 109 F.2d 313 (8th Cir.1940); *Matter of Eaton Factors Co., Inc.*, 3 B.R. 20 (Bankr.S. D.N.Y.1980). *See,* Calligar, *Subordination Agreements*, 70 Yale L.J. 376, 383–392 (1961)

The modern trend appears to be toward interpreting subordination agreements as enforceable as contractual obligations. This also seems to be the better view. Calligar, *Subordination Agreements, supra* at 338.

## IV

The question before the Court, therefore, is whether the subordination agreement gives FmHA rights to the proceeds from 1984 crops based on the fact that they received nothing in 1982 and 1983. Initially, it should be noted that the written agreement between the parties appears to have been drafted by the Bank. Consequently, under Ohio law, the subordination agreement is to be construed strictly against the party drawing it (the Bank). *Monnett v. Monnett*, 46 O.S. 30, 34, 17 N.E. 659, 662 (1888); *Smith v. Eliza Jennings Home*, 176 O.S. 351, 355, 199 N.E.2d 733, 735 (1964); *Hinman v. Barnes*, 146 O.S. 497, 66 N.E.2d 911 (1946). However, the Court may not read language or terms into a contract, nor can any be taken away by construction.

In the contractual agreement between the Bank and FmHA, the use of the term "subordinates" appears to give rise to an obligation that is more in the nature of an assignment of rights, rather than the Bank being a surety or guarantor. In other words, the Bank did not promise that FmHA would receive Eight Thousand Dollars ($8,000.00) a year. The Bank only allowed FmHA to step into their shoes for the first Eight Thousand Dollars ($8,000.00) each year. If there were no crop proceeds in 1982 and 1983, FmHA would not be entitled to recover the money from the Bank because FmHA participated in the risk that there might not be any crop proceeds. In this way, FmHA is in the same position that the Bank is in being a secured creditor. Thus, in order for FmHA to succeed in this action, they must affirmatively plead and prove that the Bank received crop proceeds in 1982 and 1983.

Farmer Citizens Bank has stated in its Response to Memorandum of Farmers Home Administration that it is "unaware of receiving crop proceeds" in 1982 and 1983. However, FmHA has submitted documentation showing three payments totaling Three Thousand Nine Hundred and Thirty-seven Dollars and Forty-seven Cents ($3,937.47) in 1982, and One Thousand Two Hundred and Two Dollars and Fifty-seven Cents ($1,202.57) in 1983. These payments were made to Account No. 19141, the account secured by the Debtor-In-Possession's crops and crop proceeds. The Court finds the documentation provided by FmHA to be sufficient. Further, in light of the fact that the Bank was the party drawing the agreement, and that the Bank is the party most likely to be in possession of information on the source of the funds used to pay their loan made on crop proceeds, and based on inferences that can be drawn from the Bank's loan records, the Court finds that the Bank received monies which should have gone to FmHA under the subordination agreement. Therefore, it appears that FmHA is entitled to the monies paid to the Bank in 1982 and 1983, as well as the full Eight Thousand Dollars ($8,000.00) for 1984.

In reaching these conclusions, the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is ORDERED that the funds held in escrow be distributed in the following manner: Thirteen Thousand One Hundred and Forty Dollars and Four Cents ($13,140.04) is to be paid to Farmers Home Administration. The balance of the funds remaining in the escrow account will go to Farmers Citizens Bank.