[No. D035139. Fourth Dist., Div. One. July 24, 2001.]

F. M. BRATCHER, Plaintiff and Respondent, v.
ROBERT BUCKNER, Defendant and Appellant.

1178

COUNSEL

James C. Mitchell for Defendant and Appellant.

Todd R. Stone and Christopher E. McAteer for Plaintiff and Respondent.

OPINION

NARES, J.—In this action arising out of a judgment lien obtained by plaintiff and respondent F. M. Bratcher, doing business as Bratcher Construction Co. (Bratcher) against defendant and appellant Robert Buckner (Buckner), Bratcher obtained a writ of execution and levy against certain real property located in Dulzura, California, owned by Buckner (the Dulzura property). Bratcher thereafter sought an order from the court to sell the Dulzura property to satisfy its judgment against Buckner. Buckner opposed the sale, asserting that his homestead exemption, together with two deeds of trust on the property that are senior to Bratcher's judgment lien, exceeded the value of the property, and therefore the sale would not produce a bid sufficient to satisfy any part of Bratcher's judgment. Bratcher in turn argued

that a subordination agreement that subordinated the two senior deeds of trust to a later Small Business Administration (SBA) loan also subordinated those deeds of trust to Bratcher's judgment lien, providing enough equity in the property to at least partially satisfy Bratcher's judgment lien. In November 1999, the court granted Bratcher's application for an order for sale of the Dulzura property, and this timely appeal follows.

On appeal, Buckner asserts the court erred in ordering a sale of the Dulzura property as (1) the order did not comply with the terms of Code of Civil Procedure[1] section 704.780, subdivision (b), which requires the court to specify the amount and distribution of the proceeds from the sale of Buckner's property; and (2) the priority of the senior deeds of trust was not altered by the SBA subordination agreement. Bratcher in turn argues that (1) Buckner lacks standing to challenge the court's decision; (2) his judgment lien takes priority over the other deeds of trust based upon the subordination agreement; and (3) the judgment should be amended, not reversed, to specify the amount and distribution of proceeds from the sale of the Dulzura property. We affirm and remand the matter with instructions that the court modify its order in conformity with section 704.780 and consistent with this decision.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Factual Background*

The facts in this case are largely undisputed. In 1976, Buckner owned the Dulzura property, which consists of 20 acres, with a house, barn and several outbuildings upon it. In February 1976, shortly before entry of a judgment in favor of Bratcher and against Buckner, Buckner recorded a homestead exemption on the Dulzura property, valued at $20,000. In March of 1976, also before entry of Bratcher's judgment, Buckner recorded a deed of trust, which at present encumbers the Dulzura property in the amount of $169,297.49, in favor of his attorneys, Gant & Asaro, allegedly to secure the performance of a promissory note and a retainer agreement (the Gant & Asaro deed of trust).[2] In March 1976, Buckner executed another deed of trust encumbering the Dulzura property, this time in favor of his parents,

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise specified.

[2] The Gant & Asaro deed of trust was originally in the amount of $21,210.63, but has since increased by virtue of interest accruing on the lien amount.

Hurley and Jean Buckner, to secure a $23,000 promissory note (the Buckner deed of trust).[3]

In May 1976, Bratcher obtained a judgment against Buckner in the amount of $18,649.30, and recorded an abstract of judgment in that same month. The Bratcher judgment was renewed in 1986 and 1996, and by 1999 had grown to $94,518.64.

In September 1979, two subordination agreements were entered into and recorded by the beneficiaries of the Gant & Asaro and Buckner deeds of trust (the subordination agreements). By these subordination agreements, it was agreed that the Gant & Asaro and Buckner deeds of trust would be junior in priority to a new deed of trust against the Dulzura property in favor of the SBA (the SBA deed of trust) to secure an SBA loan in the amount of $46,000 to Buckner. By their express language, the subordination agreements provided that the Gant & Asaro and Buckner deeds of trust would only be subordinated to the SBA's lien: "[S]aid deed of trust securing said note in favor of [the SBA] and any renewals or extensions thereof, shall unconditionally be and remain at all times a lien or charge on the property therein described, prior and superior to the lien or charge of the [Gant & Asaro and Buckner deeds of trust]."

The subordination agreements also specified they would only affect the priority of the Gant & Asaro, Buckner and SBA liens: "That this agreement shall be the whole and only agreement with regard to the subordination of the [Gant & Asaro and Buckner deeds of trust] to the lien or charge of the deed of trust in favor of [the SBA] and shall supersede or cancel, but *only insofar as would affect the priority between the deeds of trust hereinbefore specifically described*, any prior agreement as to such subordination including, but not limited [to], those provisions, if any, contained in [the Gant & Asaro and Buckner deeds of trust], which provide for *the subordination of the lien or charge thereof to another deed or deeds of trust or to another mortgage or mortgages*." (Italics added.)

No mention is made in the subordination agreements of the Bratcher judgment lien or any other lien.

The SBA deed of trust was recorded in September 1979. Thus, but for the subordination agreements, the priority of the relevant lienholders would be (1) Gant & Asaro, (2) Buckner, (3) Bratcher, and (4) the SBA.

---

[3]At various places in his respondent's brief, Bratcher implies that the Gant & Asaro and Buckner deeds of trust are not in the amounts claimed or are otherwise improper. However, Bratcher does not contest the validity or amounts of those liens on this appeal.

## B. *Procedural Background*

In June 1999, Bratcher instituted proceedings to enforce his judgment, obtained a writ of execution and levied against the Dulzura property. Bratcher then applied to the court for an order to sell the Dulzura property. Buckner opposed the motion, asserting that the value of the property was $175,000, and that the value of the homestead exemption, together with the Gant & Asaro and Buckner deeds of trust, exceeded that amount. Accordingly, Buckner contended that the court could not order a sale as a sale would not be likely to produce a bid sufficient to satisfy any amount due on Bratcher's judgment.

Bratcher in turn argued that the effect of the subordination agreements given to the SBA was to place the Gant & Asaro and Buckner deeds of trust behind the SBA's lien, thereby raising Bratcher's judgment liens to first position, subject only to the $20,000 homestead exemption. Thus, Bratcher argued, any amount owing on the Gant & Asaro and Buckner deeds of trust were irrelevant to a determination of whether the Dulzura property should be sold, and, considering only the amount of the homestead exemption and Bratcher's judgment lien, a sale was proper as it would at least partially satisfy his judgment.[4] Bratcher also contended that the Gant & Asaro and Buckner deeds of trust no longer were enforceable liens as their underlying obligations were barred by the statute of limitations.[5]

In November 1999, the court granted Bratcher's application for a sale of the Dulzura property, stating: "Plaintiff's application for an order of sale for a dwelling is granted. Defendant is granted a homestead exemption at the value in effect in 1976 [$20,000]. ([Code Civ. Proc.,] § 704.730[, subd.] (a)(1); *Berhanu v. Metzger* (1992) 12 Cal.App.4th 445 [15 Cal.Rptr.2d 191])."

This timely appeal follows.

### DISCUSSION

## I. *Buckner's Standing to Challenge the Sale of the Dulzura Property*

█ In response to Buckner's appeal, Bratcher argues as a preliminary matter that Buckner has no standing to appeal the court's order as its resolution only affects the rights of the third parties that are the beneficiaries of the Gant & Asaro and Buckner deeds of trust. We reject this argument.

---

[4]Bratcher also argued that the true fair market value of the property was $275,000.

[5]Bratcher does not renew this argument on appeal.

Parties have standing to appeal only if legally "aggrieved" by the judgment or order appealed from. (§ 902.) A party is considered legally aggrieved such that he or she has standing to appeal only if his or her "rights or interests are injuriously affected by the judgment." (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 737 [97 Cal.Rptr. 385, 488 P.2d 953].) Further, the rights or interests injuriously affected must be " ' "immediate, pecuniary, and substantial and not nominal or a remote consequence of the judgment." ' " (*Ibid.*) Thus, a party may not take an appeal based upon an error that injuriously affects only a nonappealing third party. (*Rebney v. Wells Fargo Bank* (1990) 220 Cal.App.3d 1117, 1128 [269 Cal.Rptr. 844].)

Here, there is no doubt that the court's order directing sale of Buckner's Dulzura property "injuriously affected" his rights. Buckner was the only defendant named in the litigation, the sole purpose of which was to procure an order permitting the sale of the Dulzura property to satisfy Bratcher's judgment against him. It is hard to imagine a more direct impact upon Buckner's rights. The fact that resolution of the application for sale of the Dulzura property turns on the legal issue of the priority of liens as between Bratcher and third parties is of no moment. Buckner has standing to pursue this appeal as he is certainly "aggrieved" by the order directing sale of the Dulzura property.

## II. *Validity of the Court's Order for a Sale of the Dulzura Property*

Buckner contends that the court erred in directing the sale of the Dulzura property, as the subordination agreement that placed the Gant & Asaro and Buckner deeds of trust behind an SBA loan in terms of priority did not also place those deeds of trust behind Bratcher's intervening judgment lien. As a result, Buckner asserts that the total value of the homestead exemption, the Gant & Asaro deed of trust, and the Buckner deed of trust exceed the fair market value of the property, prohibiting a forced sale as there will be no money left over to satisfy the Bratcher judgment. We agree with Buckner as to the priority of the liens on the Dulzura property. However, we also conclude that the sale order was proper as (1) the sum of the homestead exemption and the Gant & Asaro and Buckner deeds of trust does not exceed the fair market value of the property, leaving enough equity to at least partially satisfy Bratcher's lien; and (2) a sale may only be halted if the actual bids, not the estimated fair market value, do not exceed the amount of the liens prior to Bratcher's. We further direct the court to modify its sale order to comport with section 704.780 and this opinion.

### A. *Standard of Review*

As the parties agree that the facts are undisputed, and we are asked to rule upon a pure issue of law as applied to those facts, we review the

court's order directing sale of the Dulzura property under the independent review standard. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960].) Further, the interpretation of the subordination agreement is also an issue of law for us to determine anew on appeal. (*Klingele v. Engelman* (1987) 192 Cal.App.3d 1482, 1485 [238 Cal.Rptr. 199] (*Klingele*).)

### B. *Priority of the Various Lienholders*

"Other things being equal, different liens upon the same property have priority according to the time of their creation." (Civ. Code, § 2897.) Priority in this state is largely determined by recordation. Regardless of the time of transfer, the California real property recording system gives priority to the person whose instrument is first recorded. Any subsequent lien is inferior. (See Civ. Code, §§ 1213, 1215.)

■ The exception to this rule is when parties enter into a subordination agreement whereby a party agrees to subordinate the priority of his or her lien to another. (*Petit v. Blenkiron* (1936) 16 Cal.App.2d 751, 754 [61 P.2d 527]; *Klingele, supra,* 192 Cal.App.3d at pp. 1484-1485.) Black's Law Dictionary defines "subordination" as "[t]he act or process by which a person's rights or claims are ranked below those of others; *e.g.* a second mortgagee's rights are subordinate to those of the first mortgagee." (Black's Law Dict. (6th ed. 1990) p. 1426, col. 1.)

■ Although several California cases address subordination agreements in general and their enforceability under certain circumstances not relevant here,[6] the issue presented upon this appeal, the effect of the subordination of a first priority lien to a later lien upon the priority of an intervening lien, is one of first impression in California.

Ogden's Revised California Real Property Law explains the problem presented by this appeal, known as "circuity of liens": "A first-rate legal puzzle arises when, by agreement or otherwise, a superior mortgage is subordinated to another mortgage that is subject to intervening liens to which the subordinated superior lien is otherwise paramount. Circuity of lien results because the prior mortgage is displaced by the subordinating lien while apparently retaining its priority over the intervening liens. Thus, a situation is created in which each is simultaneously prior and subordinate to the other. To illustrate, an admittedly first and prior purchase-money mortgage on clear and vacant land is subordinated by express agreement to a later

---

[6]See, e.g., *Handy v. Gordon* (1967) 65 Cal.2d 578, 581 [55 Cal.Rptr. 769, 422 P.2d 329, 26 A.L.R.3d 848]; *Reeder v. Longo* (1982) 131 Cal.App.3d 291, 297 [182 Cal.Rptr. 287].

mortgage given to secure a construction loan. The loan is not recorded, however, until construction begins, thus automatically preferring mechanics' liens. The purchase-money mortgage is then subordinate to the construction loan but prior to mechanics' liens; the construction loan is prior to the purchase-money mortgage but subordinate to mechanics' liens; and the mechanics' liens are prior to the construction loan but subordinate to the purchase-money mortgage." (2 Bowman, Ogden's Revised Cal. Real Property Law (Cont.Ed.Bar 1975) Mortgages and Trust Deeds, § 17.36, p. 919 (Ogden's).) The treatise then notes that this circuity problem "has been resolved in different ways, none entirely satisfactory." (*Ibid.*)

A review of out-of-state authorities addressing this "circuity of liens" problem, as well as rules governing interpretation of contracts in general, lead us to conclude that Bratcher's argument that the subordination agreements given to the SBA also resulted in the Gant & Asaro and Buckner liens' subordination to his intervening judgment lien is untenable.

██ We begin by noting that subordination agreements, like contracts in general, are subject to the rule that they must be interpreted to enforce the objective intent of the parties. (*Klingele, supra,* 192 Cal.App.3d at p. 1485.) ██ Here, the express terms of the subordination agreements state that the Gant & Asaro and Buckner liens were only to be subordinated to the rights of the SBA lien. The Bratcher lien is nowhere mentioned in the subordination agreements. Indeed, the subordination agreements explicitly state that they are affecting priority only as between the Gant & Asaro, Buckner and SBA liens. Thus, to accept Bratcher's argument, we would effectively make him a third party beneficiary of the subordination agreements, which do not even mention him.

Additionally, to give the subordination agreements the result Bratcher suggests would give him the windfall of being placed in a first position as to priority, a position he would never otherwise achieve. The clear terms of the subordination agreements specify that they are to change priority only as between the Gant & Asaro, Buckner and SBA liens. Thus, consistent with the example discussed in Ogden's (Ogden's, *supra,* Mortgages and Trust Deeds, § 17.36, p. 919), the priority among the parties following subordination is: (1) the Gant & Asaro and Buckner liens are prior to the Bratcher lien but subordinate to the SBA lien; (2) the Bratcher lien is prior to the SBA lien but subordinate to the Gant & Asaro and Buckner liens; and (3) the SBA lien is prior to the Gant & Asaro and Buckner liens, but subordinate to the Bratcher lien.

The question then becomes, what is the practical effect of the subordination agreements as between the parties, i.e., how do we resolve this "circuity

of liens"? We believe the correct conclusion is that adopted by the majority of out-of-state authorities, under which the Gant & Asaro/Buckner liens and the SBA lien are deemed to have switched places in priority, but only to the extent of the total amount of the Gant & Asaro/Buckner liens. This result is most logical and fair as under this solution Bratcher's lien rights "and its original priority position will not be adversely or beneficially affected by the other parties' subordination agreement." (*In the Matter of Cliff's Ridge Skiing Corp.* (Bankr. W.D.Mich. 1991) 123 B.R. 753, 767 (*Cliff's Ridge*).) This result was first expressed in *ITT Diversified Credit v. First City Cap.* (Tex. 1987) 737 S.W.2d 803, 804 (*ITT*), in the following formula:

"A, B, and C have claims against the debtor which are entitled to priority in alphabetical order. 'A' subordinates his claim to 'C.' After foreclosure of the secured interest, the resulting fund is insufficient to satisfy all three claims. The proper distribution of the fund is as follows.

"1. Set aside from the fund the amount of 'A' 's claim.

"2. Out of the money set aside, pay 'C' the amount of its claim, pay 'A' to the extent of any balance remaining after 'C' 's claim is satisfied.

"3. Pay 'B' the amount of the fund remaining after 'A' 's claim has been set aside.

"4. If any balance remains in the fund after 'A' 's claim has been set aside and 'B' 's claim has been satisfied, distribute the balance to 'C' and 'A'.

"Thus, 'C', by virtue of the subordination agreement, is paid first, but only to the amount of 'A' 's claim, to which 'B' was in any event junior. 'B' receives what it expected to receive, the fund less 'A' 's prior claim. If 'A' 's claim is smaller than 'C' 's, 'C' will collect the balance of its claim, in its own right, only after 'B' has been paid in full. 'A', the subordinator, receives nothing until 'B' and 'C' have been paid except to the extent that its claim, entitled to first priority, exceeds the amount of 'C' 's claim, which, under its agreement, is to be first paid."

Several cases have followed the holding of *ITT*. (See *Cliff's Ridge, supra,* 123 B.R. at p. 767; *Duraflex Sales & Serv. v. W.H.E Mech. Contractors* (2d Cir. 1997) 110 F.3d 927, 935-936 (*Duraflex*); *Grise v. White* (1969) 355 Mass. 698 [247 N.E.2d 385, 389-390], and cases collected therein.)

A few cases have reached the result suggested by Bratcher, that is, by subordinating its lien to a junior lien, the subordinating lienholder also

subordinates its priority position to any intervening liens. (See *AmSouth Bank, N.A. v. J & D Financial* (Ala. 1996) 679 So.2d 695 (*AmSouth*); *Shaddix v. National Surety Co.* (1930) 221 Ala. 268 [128 So. 220, 224] (*Shaddix*); *McConnell v. Mortgage Investment Co. of El Paso* (Tex.Civ.App. 1956) 292 S.W.2d 636, 638 (*McConnell*).) However, these cases are unpersuasive.

First, *Shaddix* and *McConnell* provide little rationale for their decisions. (*Shaddix, supra*, 128 So. at p. 224; *McConnell, supra*, 292 S.W.2d at p. 638.) *AmSouth* (*Amsouth, supra*, 679 So.2d 695) based its decision that a beneficiary of a subordination agreement does not step into the shoes of the subordinating lienholder upon the definition of the term "subordination," stating that "[n]othing in the definition contemplates *raising* a lower priority lienholder up to the position of the subordinating party." (*Id.* at p. 698, original italics, fn. omitted.) However, the decision ignores the fact that the lower priority lienholder is only succeeding to the first priority lienholder's claim to the *extent of the amount of that claim.* Thus, for all practical purposes, the priorities remain unchanged as to the intervening lienholder: its position is neither benefited nor prejudiced. The court in *AmSouth* also ignores the uncontracted-for *windfall* that its decision gives to an intervening lienholder by placing it in a first priority position.

Nor does it matter that *ITT* involved liens on personal property, and the *AmSouth* liens were, as here, on real property. For purposes of application of subordination agreements to lien priority, there is "no valid basis for [a] distinction . . . between real property and personalty." (*Duraflex, supra*, 110 F.3d at p. 936.)

In sum, because we believe that the holdings of *ITT* and its progeny are soundly reasoned and more accurately reflect the intentions of the parties to the subordination agreements at issue here, we adopt the formula specified by the court in *ITT* for calculating lien priorities: The SBA lien succeeds to the Gant & Asaro/Buckner lien positions, but only to the extent of the amount of the Gant & Asaro/Buckner claims, and, after subtracting the SBA's claim, the Gant & Asaro/Buckner liens retain priority over Bratcher's. Under this formula, Bratcher is neither prejudiced nor benefited by the subordination agreements.

C. *Propriety of Court's Order Directing Sale of Dulzura Property*

Section 704.800, subdivision (a) provides that: "If no bid is received at a sale of a homestead pursuant to a court order for sale that exceeds the amount of the homestead exemption plus any additional amount necessary to satisfy *all liens and encumbrances* on the property, including but not limited

to any attachment or judgment lien, the homestead shall not be sold and shall be released and is not thereafter subject to a court order for sale upon subsequent application by the same judgment creditor for a period of one year." (Italics added.)

■ The phrase "all liens and encumbrances" refers to those that are senior to the executing judgment creditor (here, Bratcher), and does not include the lien of such judgment creditor. (*Rourke v. Troy* (1993) 17 Cal.App.4th 880, 885-886 [21 Cal.Rptr.2d 660] (*Rourke*).)

■ Buckner contends that the court erred in ordering a sale as, given the Gant & Asaro/Buckner lien's priority notwithstanding the subordination agreement, there is insufficient equity in the Dulzura property to satisfy all liens prior to Bratcher's, plus the homestead exemption. We reject this contention for a couple of different reasons.

First, Buckner's calculation incorrectly totals the sum of the amounts of not only the liens ahead of Bratcher, but Bratcher's lien as well. Buckner accepts the $275,000 fair market value for the Dulzura property submitted by Bratcher in support of his application for a sale of that property. Buckner then calculates that a minimum bid necessary to satisfy all liens prior to Bratcher's would be $310,297. He reaches this conclusion by adding the amounts of the homestead exemption ($20,000), the Gant & Asaro deed of trust ($169,297), the Buckner deed of trust ($23,000), and the Bratcher judgment lien ($98,000).

However, as explained in *Rourke* ( *Rourke, supra,* 17 Cal.App.4th 880), in calculating the minimum bid necessary under section 704.800, subdivision (a) one must *exclude* the value of the lien of the executing lienholder. (*Rourke, supra,* at pp. 885-886.) This is because if there is *any* amount of money from the sale that would even partially satisfy the executing creditor's lien after satisfying the liens ahead of him, the property is still subject to sale. (*Ibid.*) Calculated properly, the required minimum bid necessary for a judicial sale in the instant case would therefore be $212,297,[7] leaving $62,703 to pay to Bratcher from sale proceeds should the property fetch a bid equal to its fair market value.

Further, even if we were to accept the $175,000 fair market value for the property submitted by Buckner in opposition to the application for sale, which is $37,297 less than the amount necessary to satisfy the liens prior to Bratcher, Buckner's assertion of error still fails. Even if the fair market value of property subject to an application for sale is less than the liens superior to

---

[7]$20,000 + $169,297 + $23,000 = $212,297.

the executing lienholder, the court may still *order* a sale. It is only if an *actual bid* is received at a sale that is less than the prior liens that the sale proceedings must be stopped. (*In re Bernard* (9th Cir. 1994) 40 F.3d 1028, 1030, fn. 2, cert. den. *sub nom. Bernard v. Coyne* (1995) 514 U.S. 1065 [115 S.Ct. 1695, 131 L.Ed.2d 559]; *In re Kahan* (9th Cir. 1994) 28 F.3d 79, 82, cert. den. *sub nom. Kahan v. Seror* (1995) 513 U.S. 1150 [115 S.Ct. 1100, 130 L.Ed.2d 1067].) Thus, the court did not err in ordering a sale even if Buckner's valuation of the property were accepted.

### D. Failure of the Court to Specify the Distribution of Amounts from Sale

█ Buckner also contends that the court's sale order must be reversed because it fails to comply with section 704.780, subdivision (b), which provides in part: "The order for sale of the dwelling . . . shall specify the amount of the proceeds of the sale that is to be distributed to each person having a lien or encumbrance on the dwelling and shall include the name and address of each such person."

Bratcher concedes that the court did not comply with this section. However, we agree with Bratcher that such a technical defect does not require a reversal. Rather, we simply remand this matter with instructions to modify the order in compliance with section 704.780, and consistent with the formula enunciated, *ante*. Accordingly, we hereby direct the court to modify its order of sale to provide for the following order of distribution from the sale:

1. Payment of Buckner's homestead exemption;

2. Payment of the SBA loan;

3. The payment of the Gant & Asaro and Buckner liens, less the amount paid to the SBA;

4. Payment of the Bratcher lien; and,

5. To the extent that sufficient monies remain, payment of the remainder of the Gant & Asaro and Buckner liens.

The exact amount of payments to the parties is to be calculated by the court using the then current amount of the various parties' claims.

## DISPOSITION

The order is affirmed, and remanded with instructions to modify the sale order in conformity with section 704.780 and consistent with this opinion.

Benke, Acting P. J., and Huffman, J., concurred.