SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| In re: Petition of Price Waterhouse Limited as Judicial Trustee and Receiver of, *inter alia*, Eron Mortgage Corporation, Eron Financial Services, Ltd., and as Judicial Trustee of 494597 BC Ltd.; 519722 BC Ltd.; 530884 BC Ltd.; 534172 BC Ltd.; 494043 BC Ltd.; Maxim Resources, Ltd.; 533373 BC Ltd.; 545054 BC Ltd.; 533175 BC Ltd.; 729720 Alberta Ltd.; and 532285 BC Ltd., each a company incorporated under the laws of the Province of Canada, in a foreign proceeding by appointment of the Supreme Court of British Columbia, | Supreme Court No. CV-01-0074-CQ United States Bankruptcy Court Southern District of California Case No. 97-16013-PB (In a Case Ancillary to a Foreign Proceeding Under 11 U.S.C. §304) |
| Debtor. | Adversary No. 99-90066B |
| PricewaterhouseCoopers, Inc. as Foreign Representative herein, and Judicial Trustee of, *inter alia*, Eron Mortgage Corporation and 494597 B.C. Ltd. by Appointment of the Supreme Court of British Columbia, | |
| Plaintiff, | |
| v. | |
| Decca Design Build, Inc., an Arizona corporation, | **O P I N I O N** |
| Defendant. | |

**CERTIFIED QUESTION ANSWERED**

PERKINS COIE LLP                                          Santa Monica
     by    Steven G. F. Polard
                 and
SQUIRE, SANDERS & DEMPSEY LLP                             Phoenix
     by    Donald A. Wall
           Debora L. Verdier
Attorneys for PriceWaterhouseCoopers, Inc. as
Judicial Trustee and Foreign Representative
of Eron Mortgage Corporation, Eron Arrowhead
Ltd., and 494597 BC Ltd., et al.

ALHADEFF & SOLAR LLP                                      San Diego
     by    Robert K. Edmunds
           S. Douglas Kerner
                 and
SACKS TIERNEY                                             Scottsdale
     by    Sharon Shively
           Isabel M. Humphrey
           James W. Armstrong
Attorneys for Decca Design Build, Inc.

**J O N E S, Chief Justice**

This case involves a certified question from a bankruptcy court in California.  We address first the jurisdictional issue. The Arizona Constitution confers jurisdiction on the state supreme court as "provided by law."  Article VI, § 5(6).  By statute, this court has jurisdiction over questions certified to it by other courts, including the Supreme Court of the United States, a court of appeals of the United States, a United States district court, or a tribal court.  Arizona Revised Statutes § 12-1861 (1994) (A.R.S.).  Section 12-1861 is based on the 1967 version of the Uniform Certification of Questions of Law Act.  That act was

2

modified in 1995 specifically to include bankruptcy courts.[1]  While Arizona has not directly amended its version of that law to include any federal court, the intent of the statute as it currently exists, coupled with our own supreme court rule allowing certification of questions from *federal* and tribal courts, sufficiently provides this court with the discretionary authority to answer the bankruptcy court's certified question.  Ariz. S. Ct. R. 27(a)(1); *see also* 28 U.S.C.A. § 151 (1993) (bankruptcy judges constitute "a unit of the district court.").

The Honorable Peter Bowie of the United States Bankruptcy Court for the Southern District of California has certified the following question to this court upon stipulation of the parties:

> Where real property is subject to a first priority deed of trust, a second priority mechanic's lien, and a third priority deed of trust, where the holder of the first priority deed of trust and the holder of the third priority deed of trust enter into a written subordination agreement pursuant to which the holder of the first priority deed of trust agrees that the third priority deed of trust shall constitute a lien or charge upon said land which is unconditionally prior to and superior to the lien or charge of the first priority deed of trust, and where the holder of the second  priority mechanic's lien is not a party to the subordination agreement, what effect, if any, does the subordination agreement have on

---

[1] Unif. Certif. Questions of Law Act § 3, 12 U.L.A. 73 (1996). "The [Supreme Court] of this State may answer a question of law certified to it by a court of the United States . . . ."  The comment notes that "[t]his section has been revised to replace the previous list of federal courts with the term 'a court of the United States.'  This is intended to permit a court in a State adopting the section to answer questions certified by any United States court including bankruptcy courts."

3

the relative priorities of the liens of the three parties based on the facts set forth below?

The bankruptcy court then attached a statement of facts. We will summarize those facts as follows.

Fairway Condominium Development, Inc. (Fairway), a real estate development company, obtained a loan from a Canadian company known as 494597 B.C. Ltd. (the Canadian company) for $7.5 million to develop real property. This $7.5 million loan became the first lien on the subject property. The Canadian company later went into bankruptcy in British Columbia, Canada. An ancillary bankruptcy proceeding is underway in California commenced by Pricewaterhouse as the Canadian company's trustee.

Decca Design Build, Inc. (Decca) had a second position mechanic's lien on the same property. This mechanic's lien was for $350,000. An additional $3 million in funding was sought by Fairway for the development of the property. First Mortgage Bank (First Mortgage) supplied that additional funding, taking back the third priority deed of trust, and the property was then subject to three liens. The Canadian company and Fairway entered into a subordination agreement with First Mortgage at the time Fairway sought the additional $3 million funding. That subordination agreement specified that the $7.5 million loan would be subordinated to the $3 million lien of First Mortgage. First Mortgage's $3 million lien would then become the first priority

4

lien on the property.  The foreclosure sale of the property yielded $5 million.

**The Agreement**

The subordination agreement was between the Canadian company that funded the first $7.5 million loan and Fairway, the borrower, and First Mortgage.  First Mortgage agreed to fund the second $3 million loan to the development company in exchange for the priority of its lien before the Canadian company's lien.  The agreement did not involve or consider Decca's intervening second priority mechanic's lien.

The language of the agreement reads:

This subordination agreement results in your security interest in the property becoming subject to and of lower priority than the lien of some other or later security instrument . . . it is a condition precedent to obtaining said [$3 million] loan that said deed of trust last above mentioned shall unconditionally be and remain at all times a lien or charge upon the land . . . prior and superior to the lien or charge of the deed of trust first above mentioned . . . .

Appendix re Order re Stipulation re Request to Certify State Law Question to the Arizona Supreme Court, Exhibit C, p. 1 (Appendix, Ex. C).  The Canadian company "intentionally and unconditionally waives, relinquishes and subordinates the lien . . . first above mentioned in favor of the lien . . . in favor of [First Mortgage]." Appendix, Ex. C, p. 3.  "[T]his Agreement shall be the whole and only agreement with regard to the subordination of the lien...and shall supersede and cancel, but only insofar as would affect the

5

priority between the deeds of trust hereinbefore specifically described, any prior agreements as to such subordination . . . ." Appendix, Ex. C., p. 2.

**Analysis**

The issue, requiring that we determine the effect of a subordination agreement between first and third lienholders, presents a case of first impression in Arizona. We are aware that courts from other jurisdictions have approached the same issue in two different ways. One approach follows the partial subordination analysis of the Supreme Court of Texas in *ITT Diversified Credit Corp. v. First City Capital Corp.,* 737 S.W.2d 803 (Tex. 1987). The other follows the complete subordination analysis of the Supreme Court of Alabama in *Amsouth Bank v. J & D Financial Corp.,* 679 So. 2d 695 (Ala. 1996). For the reasons stated below, we adopt the partial subordination analysis.

Partial subordination means that this alteration of the priority of liens between the first and third lienholders has no effect on the second priority lienholder. The shift in priority relates only to the amount of the original third priority lien. If the third priority lien is larger than the original first priority lien, then the original first priority lien moves completely to the third position. The original third priority lien moves into first position *but only to the amount of the original first priority lien*. If the third priority lien is smaller than the original

6

first priority lien, then the difference between the two amounts, *up to the total of the original first priority lien*, is still in a priority position relative to the second priority lienholder.  The holder of the second priority lien is neither advantaged nor disadvantaged by the agreement.  The second priority lienholder is not a party to the agreement and should not be affected by it.  His status remains the same to the extent of any remaining assets available once the amount of the first priority lien has been satisfied.  The consequence of a subordination agreement is that the amount of the first lien simply goes toward satisfying in whole or in part two liens as opposed to one.

Without any subordination agreement, the following would be the distribution of assets:

Canadian company--$7.5 million

Decca--$350,000

First Mortgage--$3 million

With the subordination agreement, the following is the distribution of assets:

First Mortgage--$3 million

Canadian company--$4.5 million

Decca--$350,000

Canadian company--$3 million

The sum total of liens ahead of Decca remains at $7.5 million both before and after the subordination agreement.

The foreclosure sale of the subject property yielded only $5 million. The first $3 million of that amount goes to First Mortgage under the subordination agreement. The remaining $2 million goes towards satisfying the $4.5 million lien still owing to the Canadian company. No additional funds are available to satisfy Decca's lien.

This is a fair result under the circumstances as $7.5 million in liens were in priority ahead of Decca's second priority lien prior to the subordination agreement, and the same $7.5 million in liens is still ahead of Decca after subordination, but it will be distributed in respective amounts to First Mortgage and to the Canadian company. Decca's position has not been altered or modified in any way by the agreement to which it was not a party. Decca has not received a windfall nor has it suffered negative consequences. The agreement between the Canadian company and First Mortgage has no effect whatever upon Decca's lien.

Other courts follow this line of reasoning. *Grise v. White*, 247 N.E.2d 385 (Mass. 1969); *ITT, id.* at 804; *In the Matter of Cliff's Ridge Skiing Corp.*, 123 B.R. 753 (Bankr. W.D. Mich. 1991); *Duraflex Sales & Service Corp. v. W.H.E. Mechanical Contractors*, 110 F.3d 927 (2d Cir. 1997); *Mid-Ohio Chemical Co., Inc. v. Petry*, 140 F. Supp. 2d 828 (S.D. Ohio 2000); *Bratcher v. Buckner*, 109 Cal. Rptr. 2d 534, 541 (Cal. Dist. Ct. App. 2001); *see also* Gilmore, *Security Interests in Personal Property* § 39.1 at 1021 (1965).

Decca advances the theory that complete, not partial, subordination occurred here.  Under such a reading of the agreement, the original first priority lienholder would have waived *all* priority to the third party lienholder unless some reservation of first priority status occurred in the language of the agreement. Decca argues that no such reservation language exists in this agreement.  It would have the result appear as follows after the subordination agreement:

First Mortgage--$3 million

Decca--$350,000

Canadian company--$7.5 million

Decca reasons that where other liens on the same property exist, parties to subordination agreements are presumed to know about and consider them.

Some courts have followed this logic.  *Shaddix, et al. v. National Surety Co.*, 128 So. 220 (Ala. 1930); *J.C. McConnell, et al. v. Mortgage Inv. Co.*, 292 S.W.2d 636 (Tex. Civ. App. 1955); *Ladner v. Hogue Lumber & Supply Co., Inc.*, 91 So. 2d 545 (Miss. 1956); *Old Stone Mortgage and Realty Trust v. New Georgia Plumbing, Inc.*, 236 S.E.2d 592 (Ga. 1977);  *Amsouth, id.* at 695; *In re Exec Tech Partners v. Resolution Trust Corp.*, 107 F.3d 677 (8th Cir. 1997).

We reject the latter reasoning because it affects the rights of others not in privity.  Decca was not intended to be a

9

beneficiary of this agreement and is not entitled to a windfall. Because Decca's position is unaffected, a result that appears fully equitable, we embrace the partial subordination analysis.

**Conclusion**

We find that a partial subordination occurred from the subordination agreement in this matter. Decca's status as second priority lienholder remains undisturbed by the subordination agreement between the other parties.

_____
Charles E. Jones
Chief Justice

CONCURRING:

_____
Ruth V. McGregor, Vice Chief Justice

_____
Stanley G. Feldman, Justice

_____
Thomas A. Zlaket, Justice

10