*This opinion is subject to revision before final publication in the Pacific Reporter*

**2015 UT 46**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

VCS, INC., a Utah corporation; and TOM PHELPS,
*Appellants,*

*v.*

COUNTRYWIDE HOME LOANS, INC.; AXIOM FINANCIAL, LLC, a Utah
limited liability company; NATHAN K. SPENCER; NATHAN WILLIAM
VAN RIJ; SARAH SHIRLEY VAN RIJ; CRAIG BELLISTON; and NATASHA
BELLISTON,
*Appellees.*

No. 20111092
Filed April 14, 2015

Third District, Salt Lake
The Honorable Sandra N. Peuler
No. 070917958

Attorneys:

David B. Stevenson, Elizabeth A. Knudson, Ogden, for appellants

Bryce D. Panzer, Bruce M. Franson, Salt Lake City, for appellee
Countrywide Home Loans, Inc.

Daniel L. Steele, Grant M. Sumsion, Benjamin K. Lusty,
Salt Lake City, for appellee Axiom Financial, LLC

Larry G. Moore, Salt Lake City, for appellees Nathan K. Spencer,
Nathan William Van Rij, Sarah Shirley Van Rij,
Craig Belliston, and Natasha Belliston

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which
ASSOCIATE CHIEF JUSTICE LEE, JUSTICE PARRISH, JUDGE PEARCE,
and JUDGE HANSEN joined.

JUSTICE DURHAM and JUSTICE NEHRING did not participate herein;
COURT OF APPEALS JUDGE JOHN A. PEARCE and DISTRICT JUDGE ROYAL
I. HANSEN sat.

JUSTICE DENO G. HIMONAS became a member of the Court on February 13, 2015, after oral argument in this matter, and accordingly did not participate.

———————

CHIEF JUSTICE DURRANT, opinion of the Court:

**Introduction**

¶1 Appellant VCS, Inc. provided labor and materials to improve real property located in the Acord Meadows planned unit development in Salt Lake City. The developer, Acord Meadows, LLC (Acord), secured funding for the project from two lenders—America West Bank (America West) and Utah Funding Commercial, Inc. (Utah Funding). America West and Utah Funding each made several loans to Acord and secured those loans with trust deeds to the development properties. The lenders also entered into several subordination agreements among themselves that altered the priority arrangement of their trust deeds.

¶2 VCS was never paid for its work, so it filed a mechanic's lien covering several lots of the development. Four of those lots were later sold through a foreclosure sale after Acord defaulted on its loans from Utah Funding. After the sale, VCS claimed that it was entitled to payment of its mechanic's lien, despite the foreclosure, because its lien had priority over Utah Funding's liens. The district court disagreed and ruled that VCS's mechanic's lien was extinguished by the foreclosure of Utah Funding's liens.

¶3 VCS's appeal presents us with an issue of first impression in Utah—namely, where there are three or more creditors who hold an interest in the same collateral, what is the effect of a subordination agreement between fewer than all of the creditors? Courts have taken two approaches to this issue. Under the majority approach, called partial subordination, the parties to the subordination agreement simply swap places in the priority chain, leaving the nonparty creditor unaffected. In contrast, under the minority approach, called complete subordination, the subordinating creditor drops to the bottom of the priority chain and the nonparty creditor steps into first priority position.

¶4 We adopt the partial subordination approach because it better reflects the intentions of parties to subordination agreements. And in applying that approach to this case, we conclude that VCS's mechanic's lien remained junior to one of Utah Funding's liens, so the mechanic's lien was extinguished once Utah Funding's lien was foreclosed upon. On this basis we affirm the district court's ruling.

## Background

### I. Events Leading Up to the Present Dispute

¶5 The facts of this case center on fourteen parcels of real property located in Salt Lake City in the Acord Meadows planned unit development (Acord Meadows PUD). In May 2005, several buyers obtained title to lots one through fourteen of the Acord Meadows PUD.[1] Near the end of 2005, the buyers conveyed the properties to Acord Meadows, LLC (Acord). To fund the purchase, Acord granted America West a $540,000 trust deed (America West Trust Deed 1) and granted Utah Funding a $152,000 trust deed (Utah Funding Trust Deed 1).[2] Both trust deeds were entered into on December 28, 2005, and recorded on December 30, 2005.

¶6 Shortly after America West and Utah Funding recorded their trust deeds, VCS, Inc. (VCS) performed work on lots one through six and lot fourteen.[3] It did so under a previously negotiated contract between it, Acord, Lind Enterprises, Inc., and L. Kyle Lind. VCS was never paid for its work.

¶7 In May 2006, Acord granted America West another trust deed, this time for $425,000 (America West Trust Deed 2). America West recorded the deed on May 25, 2006. In connection with the new trust deed, America West required that Utah Funding agree to subordinate Utah Funding Trust Deed 1 to America West Trust Deed 2. The parties executed a subordination agreement, which was recorded on July 12, 2006 (Subordination Agreement 1).

¶8 Acord sought further funding from America West in October 2006. To secure an additional $751,233, Acord and America West agreed to modify the amount of America West Trust Deed 1 from $540,000 to $1,291,233 (Modified America Trust Deed 1). On the same day the parties modified the deed, America West executed a subordination agreement that made America West Trust Deed 2

---

[1] The May 2005 buyers were Robert Mills, Rick Newton, Bart Roser, Victoria Serre, and Lind Enterprises, Inc.

[2] Utah Funding assigned its interest in Utah Funding Trust Deed 1 to Lind Enterprises, Inc., Ms. Serre, and Huish Group on January 3, 2006. And soon after that, on January 17, 2006, Huish Group assigned its interest to North Star Funding Group, Inc.

[3] The parties agree, only for purposes of this appeal, that VCS began performing work on January 6, 2006.

subordinate to Modified America West Trust Deed 1 (Subordination Agreement 2).

¶9 Soon after receiving funds from America West, Acord sought further funding from Utah Funding. Acord granted Utah Funding a $100,000 trust deed (Utah Funding Trust Deed 2).[4] Utah Funding recorded the deed on November 13, 2006.

¶10 As a final source of funding, Acord granted America West another trust deed, this time for $200,000, on August 7, 2007 (America West Trust Deed 3).[5] This deed differed from the others in that it covered only lots one and two. America West required Utah Funding to subordinate both Utah Funding Trust Deed 1 and Utah Funding Trust Deed 2 to America West Trust Deed 3 (Subordination Agreements 3 and 4).

¶11 In September 2007, VCS filed notice of a mechanic's lien for work it performed on lots three through six for $127,335.91. And two months later, in November 2007, it filed notice of a mechanic's lien for work it performed on lots one and two for $98,000. VCS later amended each of those notices, in January 2008, by changing the date of the first labor and material to January 6, 2006.[6] It also amended the

---

[4] Utah Funding assigned its interest in Utah Funding Trust Deed 2 to Lind Enterprises, Inc., Huish Group, Keith and Verla Hamp, and American Pension Services, Inc. admin. for Vicki Serre IRA #5957 on November 3, 2006. Later, on June 27, 2007, Huish Group assigned part of its interest (including only lots one through six) to CCT Investments.

[5] We note that the parties failed to include Utah Funding Trust Deed 3 in the record. But its existence was undisputed below and the parties agree on its material terms. Moreover, the deed is referenced in one of the subordination agreements that is in the record. Accordingly, for purposes of this opinion, we assume that the deed exists and that its terms are as the parties have represented.

[6] At the time VCS filed its notice of a mechanic's lien, and at the time this lawsuit commenced, Utah law provided that a construction service lien related back to "the time of the commencement of construction service on the ground for the improvement." UTAH CODE § 38-1-5(1) (Supp. 2011). Because this was the law in place at the time of all relevant events in this case, we assume its application in this appeal. *See Gressman v. State*, 2013 UT 63, ¶ 13, 323 P.3d 998 ("Under our case law, the parties' substantive rights and liabilities are determined by the law in place at the time when a cause of action

amount owed on lots one and two to $29,876.98 and the amount owed on lots three through six to $175,907.20.

¶12 At some point during these events, America West's trust deeds were reconveyed and released. The parties have provided few specifics regarding when the deeds were released.[7] But regardless, VCS has never challenged the assertion that America West's trust deeds were reconveyed and released, and even conceded the point below. So for purposes of this appeal, we acknowledge the parties' stipulation and assume that all of America West's trust deeds were reconveyed and released.

¶13 Acord later defaulted on both Utah Funding trust deeds. The trustee of each of the trust deeds issued a notice of default and election to sell for each. Only lots one through four were listed on the notices. The trustee held a sale under Utah Funding Trust Deed 2 on March 4, 2008. Huish Group, Keith Hamp, and Verla Hamp purchased that interest. VCS alleges that co-appellant Tom Phelps and several others made a bid for the property, but that the trustee refused to accept their bid.

¶14 In August 2008, about five months after the sale under Utah Funding Trust Deed 2, the trustee held a sale under Utah Funding Trust Deed 1. North Star Funding Group, Lind Enterprises, Inc., and Ms. Serre purchased that interest. They later conveyed the interest to L. Kyle Lind. Mr. Lind then conveyed lots one, three, and four to separate buyers. He conveyed lot one to Nathan Spencer. In connection with that conveyance, Mr. Spencer executed a trust deed in favor of Axiom Financial, LLC. Mr. Lind conveyed lot three to Nathan Van Rij and Sarah Van Rij. The Van Rijs executed a note in favor of Countrywide Home Loans, Inc. to pay for lot three. And finally, Mr. Lind conveyed lot four to Craig Belliston and Natasha

---

arises . . . ." (internal quotation marks omitted)). Moreover, neither party has contested its application.

[7] One of the third-party defendants, Axiom Financial, LLC, asserts that America West Trust Deed 2 was released on May 22, 2007, approximately two months before America West loaned Acord funds under America West Trust Deed 3. But other than that assertion, there is no further evidence regarding the reconveyances of America West's trust deeds.

Belliston. Each person who purchased from Mr. Lind was named as a third-party defendant by VCS and is an appellee in this appeal.[8]

## II. Procedural History

¶15 Near the end of 2007, Acord commenced suit against VCS, alleging breach of contract, negligent misrepresentation, fraud, and estoppel. VCS answered the complaint and also made claims against third-party defendants Lind Enterprises, L. Kyle Lind, and Countrywide. VCS later amended its complaint to add Axiom Financial, LLC, Nathan Spencer, the Van Rijs, and the Bellistons as third-party defendants. VCS claimed, among other things, that its mechanic's lien had priority over the third-party defendants' interests in the Acord Meadows PUD.

¶16 Countrywide filed for summary judgment, which the district court granted. In its order the court explained,

> [T]he Court finds that the subordination agreements, which were contracts between the lenders identified therein and not intended to benefit any other party (such as VCS or the other Third-Party Plaintiffs), became null and void due to the payment of the indebtedness of the lender given priority therein and the release and reconveyances of the instruments granted priority thereby, and did not affect the priority of [Utah Funding Trust Deed 1,] pursuant to which Countrywide and its borrowers claim title.

The court later granted summary judgment in favor of the other third-party defendants on the same basis. VCS appealed the district court's rulings in favor of the third-party defendants. We have jurisdiction under Utah Code section 78A-3-102(j).

## Standard of Review

¶17 In reviewing a district court's grant of summary judgment, "we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party."[9] But we review a "district court's legal conclusions and ultimate grant or denial of summary judgment" for correctness.[10]

---

[8] VCS's claims against Countrywide have been settled. Accordingly, Countrywide is no longer a party to this appeal.

[9] *Fericks v. Lucy Ann Soffe Trust*, 2004 UT 85, ¶ 2, 100 P.3d 1200 (internal quotation marks omitted).

[10] *Massey v. Griffiths*, 2007 UT 10, ¶ 8, 152 P.3d 312.

## Analysis

¶18 VCS asks us to reverse the district court's ruling for two reasons. First, it argues that the court erred as a matter of contract law by concluding that the subordination agreements were "null and void" once America West's liens were reconveyed and released. And second, it argues that, assuming that the subordination agreements were not "null and void," its mechanic's lien had priority over Utah Funding Trust Deed 1 because that deed lost its original priority position as a result of being subject to several subordination agreements. The district court did not reach VCS's second argument because it determined that there was no need to do so once it ruled against VCS on the first issue.

¶19 We affirm the district court's ruling, but do so on an alternative basis. Even were we to agree with VCS on the first issue (and so disagree with the district court), we would nonetheless affirm the district court's ruling because VCS's mechanic's lien was junior to Utah Funding Trust Deed 1, and so was extinguished when Utah Funding Trust Deed 1 was foreclosed upon.

¶20 In reaching that conclusion, we adopt the majority approach—termed "partial subordination"—to the issue of circular lien priorities, which arises where there are at least three creditors who hold an interest in the same property and fewer than all of those creditors enter into a subordination agreement. We do so because the partial subordination approach most accurately reflects the intentions of parties who enter into subordination agreements and it also prevents nonparty creditors, such as VCS, from obtaining a windfall. Applying that approach to this case, we conclude that Utah Funding Trust Deed 1 had priority over VCS's mechanic's lien. Because we resolve the case in this manner, we have no need to decide whether the district court correctly decided that the subordination agreements were "null and void" once America West's liens were reconveyed and released.

¶21 VCS's final argument is that Utah Funding (and its assignees) received more money from the foreclosure sale than they were entitled to. We decline to address the merits of this argument, however, because it is unpreserved.

## I. Under the Partial Subordination Approach, Utah Funding Trust Deed 1 had Priority Over VCS's Mechanic's Lien

¶22 VCS argues that the subordination agreements entered into by Utah Funding rearranged the priority chain and resulted in VCS's mechanic's lien having priority over Utah Funding Trust Deed 1. In

making this argument, VCS asks us to adopt a minority approach to the issue of circular lien priorities called "complete subordination." But we decline to do so and instead adopt the majority approach, which is called "partial subordination." Under that approach, Utah Funding Trust Deed 1 retained priority over VCS's mechanic's lien even though it was subject to several subordination agreements.

¶23 The issue of circular lien priorities is an issue of first impression in Utah. Described simply, this issue arises where three or more creditors hold an interest in the same collateral and fewer than all of the creditors enter into a subordination agreement. The resulting question is what effect the subordination agreement has on the nonparty creditors.[11]

¶24 Here, the issue arises because America West, Utah Funding, and VCS each held an interest in the Acord Meadows PUD. America West and Utah Funding entered into four different subordination agreements that purported to alter the priority among their respective interests. VCS is not a party to any of these agreements. The following chart describes the effect of each subordination agreement:

---

[11] We note that this issue appears to arise most often in cases involving personal property, not real property. *See, e.g.*, *Caterpillar Fin. Servs. Corp. v. Peoples Nat'l Bank, N.A.*, 710 F.3d 691, 693–94 (7th Cir. 2013). But neither party has argued that this distinction matters in this case. Moreover, at least one court has concluded that, as to this issue, there is no distinction "to draw between real property and personalty." *Duraflex Sales & Serv. Corp. v. W.H.E. Mech. Contractors*, 110 F.3d 927, 936 (2d Cir. 1997). We, too, see no reason why the analysis should differ depending on whether real property or personal property is at issue.

| Agreement | Effect |
|---|---|
| Subordination Agreement 1 | Subordinated Utah Funding Trust Deed 1 to America West Trust Deed 2 |
| Subordination Agreement 2 | Subordinated America West Trust Deed 2 to Modified America West Trust Deed 1 |
| Subordination Agreement 3 | Subordinated Utah Funding Trust Deed 1 to America West Trust Deed 3 |
| Subordination Agreement 4 | Subordinated Utah Funding Trust Deed 2 to America West Trust Deed 3 |

We are primarily concerned with whether Utah Funding Trust Deed 1 had priority over VCS's mechanic's lien because each of the third-party defendants obtained title through the foreclosure on Utah Funding Trust Deed 1. VCS argues that although its mechanic's lien was originally junior to Utah Funding Trust Deed 1 because it was recorded later, it gained priority over Utah Funding Trust Deed 1 as a result of the various subordination agreements outlined above.

¶25 The partial subordination approach for addressing circular lien priorities holds that the nonparty creditor is unaffected by the subordination agreement and "simply swaps the priorities of the parties to the subordination agreement."[12] The following hypothetical illustrates how this approach operates:

> [T]he third lienholder should be able to succeed to that part of the interest that was subordinated by the first lienholder, so long as the second lienholder is neither burdened nor benefitted by the subordination agreement. For example, A, B and C have claims against the debtor which are entitled to priority in alphabetical order. "A" subordinates his claim to "C." After foreclosure of the secured interest, the resulting fund is insufficient to satisfy all three claims. The proper distribution of the fund is as follows.
>
> 1. Set aside from the fund the amount of "A" 's claim.
>
> 2. Out of the money set aside, pay "C" the amount of its claim, pay "A" to the extent of any balance remaining after "C" 's claim is satisfied.

---

[12] *Caterpillar Fin. Servs. Corp.*, 710 F.3d at 693–94.

3. Pay "B" the amount of the fund remaining after "A" 's claim has been set aside.

4. If any balance remains in the fund after "A" 's claim has been set aside and "B" 's claim has been satisfied, distribute the balance to "C" and "A".

Thus, "C", by virtue of the subordination agreement, is paid first, but only to the amount of "A" 's claim, to which "B" was in any event junior. "B" receives what it had expected to receive, the fund less "A" 's prior claim. If "A" 's claim is smaller than "C" 's, "C" will collect the balance of its claim, in its own right, only after "B" has been paid in full. "A", the subordinator, receives nothing until "B" and "C" have been paid except to the extent that its claim, entitled to first priority, exceeds the amount of "C" 's claim, which, under its agreement, is to be first paid.[13]

Partial subordination is the approach subscribed to by a majority of jurisdictions.[14]

¶26 The complete subordination approach reaches a different result under the same hypothetical. Under that approach, C remains junior to B even though A agrees to subordinate its interest to C's. So under the complete subordination approach, B moves into first

---

[13] *ITT Diversified Credit Corp. v. First City Capital Corp.*, 737 S.W.2d 803, 804 (Tex. 1987) (citing Grant Gilmore, Security Interests in Personal Property § 39.1 at 1021 (1965)).

[14] *See Caterpillar Fin. Servs. Corp.*, 710 F.3d at 693–94; *Duraflex Sales & Serv. Corp.*, 110 F.3d at 936; *Mid-Ohio Chem. Co. v. Petry*, 140 F. Supp. 2d 828, 830–31 (S.D. Ohio 2000); *In re Cliff's Ridge Skiing Corp.*, 123 B.R. 753, 766–67 (Bankr. W.D. Mich. 1991); *In re Price Waterhouse Ltd.*, 46 P.3d 408, 410–11 (Ariz. 2002); *Bratcher v. Buckner*, 109 Cal. Rptr. 2d 534, 542 (Ct. App. 2001); *Co-Alliance, LLP v. Monticello Farm Serv., Inc.*, 7 N.E.3d 355, 359–60 (Ind. Ct. App. 2014); *Grise v. White*, 247 N.E.2d 385, 389–91 (Mass. 1969); *ITT Diversified Credit Corp.*, 737 S.W.2d at 804. We also note that one of the principal architects of the Uniform Commercial Code also advanced the partial subordination approach. *See* Grant Gilmore, Security Interests in Personal Property § 39.1 at 1021 (1965).

priority position, then C, then A. A minority of jurisdictions have adopted this approach.[15]

¶27 But the cases applying the complete subordination approach offer little justification for doing so. One rationale is that the complete subordination approach more closely adheres to the dictionary definition of "subordination." As the Alabama Supreme Court explained, "[b]y definition, 'subordination' contemplates a reduction in priority. Nothing in the definition contemplates *raising* a lower priority lienholder up to the position of the subordinating party."[16] But this rationale is unpersuasive because the central question in cases of circular lien priorities is what the parties intended, not what the dictionary definition of "subordination" is in a vacuum.[17]

¶28 Another rationale for the complete subordination approach is that it prevents the nonparty creditor from being harmed. But this rationale is equally unpersuasive because it fails to recognize that the partial subordination approach offers nonparty creditors the same protection. As the hypothetical above illustrates, under partial subordination, C (the creditor gaining priority) only gains priority to the extent that A (the creditor who originally had priority) would have had priority.[18] Explained differently, "[t]he 'partial' in 'partial

---

[15] *See, e.g., AmSouth Bank, N.A. v. J & D Fin. Corp.*, 679 So. 2d 695, 698 (Ala. 1996) (per curiam); *Old Stone Mortg. & Realty Trust v. New Ga. Plumbing, Inc.*, 236 S.E.2d 592, 593 (Ga. 1977); *Blickenstaff v. Clegg*, 97 P.3d 439, 447–48 (Idaho 2004); *Ladner v. Hogue Lumber & Supply Co.*, 91 So. 2d 545, 547 (Miss. 1956).

[16] *AmSouth Bank, N.A.*, 679 So. 2d at 698; *see also* BLACK'S LAW DICTIONARY 1563 (9th ed. 2009) (defining "subordination" as "[t]he act or an instance of moving something (such as a right or claim) to a lower rank, class, or position").

[17] *See, e.g., Strohm v. ClearOne Commc'ns, Inc.*, 2013 UT 21, ¶ 34, 308 P.3d 424 ("When interpreting a contract, a court first looks to the contract's four corners to determine the parties' intentions, which are controlling." (internal quotation marks omitted)).

[18] *ITT Diversified Credit Corp.*, 737 S.W.2d at 804 (explaining that the proper distribution of funds is: "1. Set aside from the fund the amount of "A"'s claim. 2. Out of the money set aside, pay "C" the amount of its claim, pay "A" to the extent of any balance remaining after "C"'s claim is satisfied." (citing GRANT GILMORE, SECURITY INTERESTS IN PERSONAL PROPERTY § 39.1 at 1021 (1965))).

subordination' denotes the fact that the parties to a subordination agreement swap places in the priority ladder only to the extent of the smaller of the swapping parties' loans."[19]

¶29 We decline to adopt the complete subordination approach because it conflicts with the well-established rule that the parties' intentions control a contract. As the Seventh Circuit explained, complete subordination "would benefit a nonparty to the subordination agreement . . . and why would the parties to the subordination agreement, who did not include [the nonparty], want to do that?"[20] We have made this same point in several contract-law cases involving third-party beneficiaries by observing that the "benefits conferred by contracts are presumed to flow exclusively to the parties who sign the contracts. A third party may claim a contract benefit only if the parties to the contract clearly express an intention to confer a separate and distinct benefit on the third party."[21]

¶30 The subordination agreements that affected Utah Funding's trust deeds evidence the intent to alter the priority arrangement of interests held by Utah Funding and America West, not VCS. Each of the agreements provides as follows: "[The applicable Utah Funding lien] is hereby made second and subordinate to the [applicable America West lien]." Nothing in that language suggests that the parties intended to benefit VCS. Applying complete subordination would "allow an intervening lienholder to obtain a windfall by becoming a senior lienholder through no action of [its] own."[22]

¶31 In this case, Utah Funding recorded Utah Funding Trust Deed 1 before the date VCS began performing work on the Acord Meadows PUD, which gave Utah Funding Trust Deed 1 priority.[23] Under the partial subordination approach, that priority arrangement was unaffected by the subordination agreements between Utah

---

[19] *Caterpillar Fin. Servs. Corp.*, 710 F.3d at 694.

[20] *Id.* at 693.

[21] *Bybee v. Abdulla*, 2008 UT 35, ¶ 36, 189 P.3d 40 (internal quotation marks omitted).

[22] *Co-Alliance, LLP*, 7 N.E.3d at 359.

[23] *See Ault v. Holden*, 2002 UT 33, ¶ 31, 44 P.3d 781 ("In Utah, between two purchasers of real property, the first to validly record a conveyance and take the property without notice of a prior interest in the property takes the property over a purchaser who subsequently records a deed.").

Funding and America West. The subordination agreements affected the priority arrangement between America West and Utah Funding vis-à-vis each other. Neither party intended to allow VCS's mechanic's lien to jump ahead in the priority chain. For these reasons, we conclude that Utah Funding Trust Deed 1 had priority over VCS's mechanic's lien, and foreclosure on that trust deed extinguished VCS's mechanic's lien. On this basis we affirm the district court's ruling.

## II. VCS Did Not Preserve Its Argument That Utah Funding Received More Money From the Foreclosure Sale Than It Was Entitled To

¶32 VCS next argues that Utah Funding Trust Deed 1's priority is limited to the original amount of its lien—$152,000. But we decline to address the merits of this argument because VCS failed to preserve it.[24]

¶33 As a general rule, we "will not consider an issue unless it has been preserved in the court below."[25] And the question of whether a party has preserved an issue below "turns on whether the district court ha[d] an opportunity to rule on [the] issue."[26]

¶34 VCS did not argue below that Utah Funding Trust Deed 1's priority was limited to $152,000.[27] Moreover, VCS has not established

---

[24] Within its argument that Utah Funding (and its assignees) received more money than they were entitled to from the foreclosure sale, VCS appears to also argue that the modification of America West Trust Deed 1 prejudiced VCS's rights under its mechanic's lien. But VCS did not make this argument below and so it, too, is unpreserved. Moreover, given the fact that VCS has conceded that America West's liens were reconveyed and released, it is unclear why those liens would even be relevant for purposes of the foreclosure sale.

[25] *Baird v. Baird*, 2014 UT 8, ¶ 20, 322 P.3d 728 (internal quotation marks omitted).

[26] *Id.* (internal quotation marks omitted).

[27] At oral argument, counsel for VCS was pressed for record citations that would establish VCS preserved this argument below. Counsel cited several pages in the transcript of the hearing held on Countrywide's motion for summary judgment. But those pages do not support VCS's position. In that portion of the hearing, counsel for VCS referred to several Utah Court of Appeals cases for the proposition that Utah courts had expressed "sympathy" for the

as a factual matter that the foreclosure sale on Utah Funding Trust Deed 1 netted proceeds in excess of $152,000, and, in fact, at oral argument counsel for VCS stated that the foreclosure sale did not "generate enough to satisfy the $152,000 trust deed." So, on the one hand, VCS argues that Utah Funding (and its assignees) received too much, but, on the other hand, it acknowledges that the foreclosure sale did not generate enough proceeds to satisfy Utah Funding Trust Deed 1. VCS's inconsistent argument is likely a product of the fact that there was no record developed below on the issue.

¶35 In short, because VCS never gave the district court an opportunity to rule on the issue of whether Utah Funding (and its assignees) received more than the value of Utah Funding Trust Deed 1 ($152,000), the argument is unpreserved.

### Conclusion

¶36 We adopt the partial subordination approach to the issue of circular lien priorities. Under that approach, Utah Funding Trust Deed 1 retained priority over VCS's mechanic's lien. On that basis, we affirm the district court's ruling that foreclosure on Utah Funding Trust Deed 1 extinguished VCS's mechanic's lien.

———————————

complete subordination approach. Counsel did not use those cases in support of the argument now made on appeal—that Utah Funding (and its assignees) received more than they were entitled to from the foreclosure sale.