Opinion by JUDGE NEY*
¶ 1 Lienholders Tomar Development, Inc. (Tomar); Roy A. Friend, Janet C. Friend, *580 Norma Jean Friend, and Friend Family, LLLP (the Friend Family); and Karen and Danny Damyanovich (the Damyanoviches) appeal from the trial court's dismissal of their claims for declaratory judgments of their lien priorities, under C.R.C.P. 12(b)(5). We affirm the trial court's orders.
¶ 2 In dismissing those claims, the court adopted a partial subordination approach to interpreting subordination agreements. Whether to apply a complete or a partial subordination approach presents an issue of first impression in Colorado. In determining the seniority of lien priorities, various jurisdictions have applied one of these two approaches. The majority of jurisdictions have applied the partial subordination approach. As will be explained in more detail below, under this approach, the subordinating party contracts with a more junior lienholder to subordinate its interest to that junior lienholder. Thus, the junior lienholder becomes senior to all others, but only to the extent of the subordinating party's interest, leaving any intermediary lienholders unaffected.
¶ 3 A minority of jurisdictions have adopted a complete subordination approach. Under this approach, when the subordinating party contracts with a more junior lienholder to subordinate its interest to that junior lienholder, all of the parties simply move up in priority order. So, for example, whoever held the interest that had second priority would now hold the most senior priority position.
¶ 4 First Citizens Bank and Trust Company (First Citizens Bank) cross appeals, asserting that the trial court should not have reached the partial versus complete subordination issue.[1]
¶ 5 We hold that a partial subordination approach better reflects the law in Colorado. Applying that approach to the facts of this case, we conclude that the trial court properly dismissed the claims under C.R.C.P. 12(b)(5).
I. Background
¶ 6 In 2007, the Friend Family sold its ranch to Friend Ranch Investors Group (FRIG) to develop it into a resort-style golf course community. FRIG also purchased adjoining properties for the development project, including property owned by the Damyanoviches. FRIG gave both the Friend Family and the Damyanoviches notes secured by deeds of trust for their respective conveyances. To finance the purchases, FRIG obtained a loan from CCB that ultimately amounted to $11,000,000. The loan was secured by a deed of trust (CCB's senior lien). The Friend Family and the Damyanoviches expressly agreed in writing that their respective lien interests in the property would be junior and subordinate to CCB's senior lien.
¶ 7 In 2009, FRIG borrowed $2,200,000 from Tomar, which was secured by a deed of trust that was junior to the CCB senior lien.
¶ 8 In 2010, FRIG conveyed the property to Mulligan, LLC, and CCB assigned its senior lien to Bent Tree, LLC. Bent Tree is the sole member and owner of Mulligan. CCB then issued a loan to Bent Tree for $11,000,000. Mulligan then issued CCB a new junior deed of trust (CCB's junior lien) on the property. At that time, the relevant order of priority was (1) CCB's senior lien, (2) Tomar, (3) the Damyanoviches, (4) the Friend Family, and (5) CCB's junior lien.[2]
¶ 9 Bent Tree, Mulligan, and CCB then entered into a subordination agreement whereby CCB's senior lien became subordinate to CCB's junior lien. Neither Tomar, the Damyanoviches, nor the Friend Family was involved in or an intended beneficiary of *581 the subordination agreement. CCB's senior lien was never released.
¶ 10 Bent Tree then foreclosed on CCB's senior lien and, in November 2010, Bent Tree bought the property at a public trustee's foreclosure sale for about $11,800,000. The intermediary lienholders were all given notice of the foreclosure, but none of them sought to redeem their interests. Tomar did, however, immediately file a complaint seeking to protect its interest.
¶ 11 The trial court ultimately dismissed Tomar's, the Friend Family's, and the Damyanoviches' claims, each of which sought declaratory judgments as to the priority of their interests, under C.R.C.P. 12(b)(5). In so doing, the court adopted the partial subordination approach to interpreting the Mulligan/Bent Tree/CCB subordination agreement. This appeal followed.[3]
II. Standard of Review for a Dismissal under C.R.C.P. 12(b)(5)
¶ 12 We review de novo a trial court's dismissal of a claim under C.R.C.P. 12(b)(5). See Denver Post Corp. v. Ritter, 255 P.3d 1083, 1088 (Colo.2011). In doing so, "[w]e accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Id. Under C.R.C.P. 12(b)(5), "a complaint should not be dismissed unless it appears beyond a doubt that a claimant can prove no set of facts in support of the claim which would entitle the claimant to relief." Colo. Ins. Guar. Ass'n v. Menor, 166 P.3d 205, 212 (Colo.App.2007) ("A complaint should not be dismissed for failure to state a claim so long as the claimant is entitled to some relief upon any theory of the law."); see Bly v. Story, 241 P.3d 529, 533 (Colo.2010).
¶ 13 Determining whether the claimants' dismissed claims asserted claims upon which relief could be granted requires us to address the issue of complete versus partial subordination and to adopt the approach that is most consistent with Colorado's race-notice and foreclosure statutes and with Colorado's laws regarding contract interpretation.
III. Complete versus Partial Subordination
¶ 14 Colorado is a race-notice state, meaning security interest priorities are determined by the order of filing. See § 38-35-109(1), C.R.S. 2014; Premier Bank v. Bd. of Cnty. Comm'rs, 214 P.3d 574, 579 (Colo.App.2009) ("Race-notice is the linchpin of Colorado real estate law. Its purpose is to enable a buyer or mortgagee, by analysis of the chain of title, to determine exactly what it is acquiring." (citation omitted)); accord Joondeph v. Hicks, 235 P.3d 303, 306 (Colo.2010). Parties may, however, contract for a different order of priority. See Co-Alliance, LLP v. Monticello Farm Serv., Inc., 7 N.E.3d 355, 358 (Ind.Ct.App.2014) ( "Subordination agreements are nothing more than contractual modifications of lien priorities."); ITT Diversified Credit Corp. v. First Capital Corp., 737 S.W.2d 803, 804 (Tex.1987) ("[A] subordination agreement is nothing more than a contractual modification of lien priorities and must be construed according to the expressed intention of the parties and its terms.").
¶ 15 A problem arises, however, when the most senior lienholder ("A") agrees to subordinate his interest to the most junior lienholder ("C") without consulting the intermediary lienholders ("B"). The question then becomes, where do those intermediary lienholders fall in the order of priority? This problem is often called the circuity of liens. See VCS, Inc. v. Countrywide Home Loans, Inc., 2015 UT 46, ¶ 23, 349 P.3d 704 ; George A. Nation III, Circuity of Liens Arising from Subordination Agreements: Comforting Unanimity No More, 83 B.U. L.Rev. 591, 592 (2003). There are two generally accepted approaches to dealing with this problem.
¶ 16 The majority of jurisdictions that have addressed this problem have adopted a partial subordination approach. See, e.g., *582 In re Price Waterhouse Ltd., 202 Ariz. 397, 46 P.3d 408 (2002) ; Co-Alliance, LLP, ; ITT Diversified Credit Corp., 737 S.W.2d 803. Under this approach, when A subordinates to C, C becomes the most senior lienholder, but only to the extent of A's original lien. See Co-Alliance, LLP, . Thus, if A's interest is less than C's interest, the priority of security interests is:
• C's interest is secured first, but only to the extent of A's original lien;
• B is secured to the full extent of its interest and remains second in priority to the full amount of A's lien;
• C is third in priority, secured to the amount of its interest remaining after deducting the amount of A's interest;
• and then A is the most junior security interest.
¶ 17 As another example, if A's interest is greater than C's interest, the priority of security interests is:
• C's security interest is first;
• A's interest is second, except for the amount that has been subordinated to C;
B is secured to the full extent of its interest and remains second in priority to the full amount of A's lien;
• and then the remaining portion of A's security interest, the portion that was subordinated to C, is last.
¶ 18 Under this partial subordination approach, B is not affected in any manner by the agreement between A and C, to which it was not privy. See In re Price Waterhouse, 46 P.3d at 410-11. B remains second in priority to the full amount of A's original lien, neither receiving a windfall nor suffering negative consequences. See id. at 411 ; VCS, Inc., ¶¶ 30-31, 349 P.3d at 711. In essence, B's interest remains totally unaffected by A and C's subordination agreement.
¶ 19 The minority of jurisdictions follow what is called the complete subordination approach. See, e.g., AmSouth Bank, N.A. v. J & D Fin. Corp., 679 So.2d 695 (Ala.1996) ; Old Stone Mortg. & Realty Trust v. New Ga. Plumbing, Inc., 239 Ga. 345, 236 S.E.2d 592 (1977). Under this approach, when A subordinates to C, B simply moves up in priority. So any foreclosure will result in the priority of lien payments to B first, then C, then A. Jurisdictions following this approach seem to focus more strictly on the dictionary definition of subordination than on the intent of the parties. See AmSouth Bank, 679 So.2d at 698 ("By definition, 'subordination' contemplates a reduction in priority. Nothing in the definition contemplates raising a lower priority lienholder up to the position of the subordinating party."); accord Co-Alliance, LLP, ; VCS, Inc., ¶ 27, 349 P.3d at 710. This approach, however, would affect the rights of those not in privity to the subordination agreement, who were not beneficiaries to the agreement, and who were not entitled to a windfall. See In re Price Waterhouse, 46 P.3d at 412.
¶ 20 The appellants here assert that Colorado should adopt a complete subordination approach. They argue that the division's holding in Pope Heating & Air Conditioning Co. v. Garrett-Bromfield Mortgage Co., 29 Colo.App. 169, 480 P.2d 602 (1971), supports adoption of this approach. We conclude, as did the trial court, that Pope is of limited precedential value to the case before us.
¶ 21 In Pope, the subordinating lienholder sought to reinstate his lien to first priority position. See Pope Heating, 29 Colo.App. at 175, 480 P.2d at 605. The division did not discuss the effect of the subordination on the intermediary parties as compared to the most junior lienholder. Accordingly, we do not consider this case authority in the partial versus complete subordination debate.
¶ 22 We believe that the partial subordination approach most closely comports with Colorado law. It promotes the intent of the parties and is less likely to impact the security interests of the intermediary lienholders, either positively or negatively, than the complete subordination approach. See VCS, Inc., ¶ 29, 349 P.3d at 711 (The complete subordination approach "conflicts with the well-established rule that the parties' intentions control a contract."). As a California court has explained:
"Courts that follow the partial subordination approach focus less on the meaning of the word 'subordination' and instead focus on the probable intent of the contracting *583 parties. In addition, these courts often note that the party in the position of the intervening lienholder (B in our example) is not usually a party to the subordination agreement. This lack of privity convinces these courts that the subordination agreement should have no effect, negative or positive, on the intervening lienholder."
Wells Fargo Bank v. Neilsen, 178 Cal.App.4th 602, 100 Cal.Rptr.3d 547, 556-57 (2009) (quoting Nation, 83 B.U. L.Rev. at 597 ). Conversely, the complete subordination approach results in a windfall to the intermediary lienholders, which would not comport with the intent of the parties to a subordinating agreement. See VCS, Inc., ¶ 29, 349 P.3d at 711.
¶ 23 We also note that, contrary to the trial court's finding, the partial subordination approach does not result in CCB's senior lien ("A") and CCB's junior lien ("C") exchanging places. Rather, A moves its priority to below C. Thus, as explained above, C does not exchange places with A, A just moves down. C only becomes first in priority to the extent of A's lien. And, again, the intermediary lienholders are not affected, positively or negatively, by this shuffling of A and C relative to each other.
IV. Conclusion
¶ 24 Therefore, we hold that under a partial subordination approach, on the foreclosure of the senior CCB lien, Bent Tree's interest would be senior to all others, but only to the extent of CCB's senior lien. And then Tomar's, the Damyanoviches', and the Friend Family's priority positions would remain unchanged. Accordingly, Tomar's, the Damyanoviches', and the Friend Family's claims seeking a declaratory judgment that each of their interests was senior to all other interests must fail as a matter of law. Thus, we further conclude that the trial court properly dismissed each of their respective claims under C.R.C.P. 12(b)(5). Because of our resolution of this issue, we decline to address First Citizens Bank's contention on cross-appeal that the trial court need not reach the complete versus partial subordination question because doing so would have no effect on the outcome.
¶ 25 The trial court's orders are affirmed.
JUDGE FURMAN and JUDGE BOORAS concur.

Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5 (3), and § 24-51-1105, C.R.S.2014.

First Citizens Bank is the successor to Colorado Capital Bank (CCB). CCB was the party involved in the relevant loans, conveyances, and agreements that are at issue in the underlying case.

There is some debate regarding the order of priority amongst Tomar, the Damyanoviches, and the Friend Family. All three of these parties entered into subordination agreements with CCB, relinquishing any claim to first priority to CCB, and also with each other. Thus, by agreement, their relative priorities were not based strictly on who had filed first in time. However, for the purposes of this appeal, the relative priority among those three lienholders is immaterial. It is sufficient to note that CCB's senior lien is first and CCB's junior lien is last.

The parties initially appealed the orders issued August 4, 2011. A division of this court concluded that there was no "particular economy to the trial court or the parties" in accepting the interlocutory appeal and, therefore, dismissed the appeal. See Tomar Dev., Inc. v. Bent Tree, LLC, 264 P.3d 651, 653 (Colo.App.2011). The trial court then finalized the August 4th orders on February 28, 2014. This appeal stems from that 2014 order.