PRESENT: Lemons, C.J., Mims, Powell, Kelsey, McCullough, and Chafin, JJ., and Lacy, S.J.

FUTURI REAL ESTATE, INC.

v. Record No. 181501

OPINION BY
SENIOR JUSTICE ELIZABETH B. LACY
November 27, 2019

ATLANTIC TRUSTEE SERVICES,
LLC, ET AL.

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
David Bernhard, Judge

In this appeal, we consider, as a matter of first impression, whether a subordination agreement between a senior lienholder and a lienholder in third priority, which addresses only the priority of the parties to the agreement, should be construed as a complete or partial subordination of the senior lienholder's priority position.

FACTS AND PROCEEDINGS

Milton Cortez and Armida Cortez owned real property which was encumbered by three separate lines of credit: (1) Wells Fargo Bank, N.A., successor-in-interest to Wachovia Bank, N.A., in the amount of $415,000 secured by a deed of trust recorded September 23, 2005 ("2005 Wells Fargo lien"); (2) SunTrust Bank in the amount of $220,000 secured by a deed of trust recorded September 30, 2005 ("SunTrust lien"); and (3) Wells Fargo in the amount of $252,007.33 secured by a deed of trust recorded October 25, 2006 ("2006 Wells Fargo lien"). On October 26, 2006, a Subordination Agreement ("the Agreement") was recorded, which provided in pertinent part that "Lender [Wells Fargo] has been requested to and has agreed to subordinate the lien of the Original Security Instrument [the 2005 Wells Fargo lien] to the lien of the Subsequent Security Instrument [the 2006 Wells Fargo lien]."

In 2016, the Cortezes defaulted on the SunTrust lien and the property went into foreclosure. In January 2017, Atlantic Trustee Services, L.L.C., Substitute Trustee ("Trustee"),

sold the property at a public auction to Futuri Real Estate, Inc. ("Futuri") for $468,000. Trustee submitted its final accounting of the foreclosure sale to the commissioner of accounts for the County of Fairfax, which stated that from the $468,000 sale fund it disbursed $44,772.50 in applicable taxes, fees and costs and $224,579.56 to SunTrust in full satisfaction of its lien with interest and late charges, leaving a surplus of $201,647.94 for other disbursements.

A dispute arose between Futuri and Wells Fargo concerning the disbursal of the surplus fund. Trustee filed an interpleader with the circuit court seeking an order to pay the surplus fund to the Clerk of Court pending judicial determination of the proper recipient(s). As relevant here, Futuri filed a cross-claim against Wells Fargo seeking a declaratory judgment that the 2006 Subordination Agreement ousted the 2005 Wells Fargo lien from its first priority position and put it in line behind the 2006 Wells Fargo lien, and therefore, the SunTrust lien was moved into first priority over the 2005 and 2006 Wells Fargo liens. Futuri sought an order that the foreclosure on the SunTrust lien was of a First Deed of Trust loan and that the foreclosure extinguished both Wells Fargo liens.[1]

Wells Fargo moved to dismiss the cross-claim, arguing that the language in the Agreement clearly demonstrated it was by, between and only for the benefit of the two Wells Fargo loans. Relying on foreign cases interpreting similar subordination agreements, Wells Fargo submitted that the Agreement was a partial subordination agreement which did not alter the priority position of the 2005 Wells Fargo lien, but put the 2006 Wells Fargo lien in a first priority position as to the 2005 Wells Fargo lien, only for purposes of being satisfied first. *In Re Price Waterhouse, Ltd.,* 46 P.3d 408 (Ariz. 2002); *ITT Diversified Credit Corp. v. First City*

---

[1] Futuri also filed a counter-claim against Atlantic Trustee Services, LLC and a third-party claim against SunTrust Bank and TRSTE INC, trustees.

*Capital Corp.,* 737 S.W.2d 803 (Tex. 1987); *Wells Fargo Bank v. Neilsen,* 100 Cal. Rptr. 3d 547 (2009). Accordingly, argued Wells Fargo, the Agreement had no effect as to SunTrust's priority status and therefore the 2005 Wells Fargo lien survived the foreclosure and continued to encumber the property at issue.

The circuit court determined there were no issues of fact generally in dispute. The court next considered whether the Agreement resulted in partial or complete subordination. Acknowledging the issue was one of first impression in this jurisdiction, the court reviewed the jurisprudence of states adopting the complete subordination rule, the minority rule, and those adhering to the partial subordination rule, the majority rule. Following that review, the circuit court issued an opinion letter on January 10, 2018, in which it determined that Virginia law is in harmony with the partial subordination rule because it does not interfere with the rights or position of intervening lienors not parties to the subordination agreement, does not create a windfall to the intervening lienors by elevating their priority positions as the complete subordination rule does, and, that where the intent of the parties to the subordination agreement is clear, less than perfect drafting of the agreement should not defeat that intent. Concluding that the plain language of the Agreement demonstrated that Wells Fargo intended to impact only the two loans it referenced, the 2005 and 2006 Wells Fargo Loans, the court held that the Agreement was a partial subordination agreement. On February 8, 2018, the circuit court entered judgment dismissing Futuri's cross-claim.

Futuri filed a motion for reconsideration arguing that discovery, which was completed subsequent to the circuit court's opinion letter, required the court to conduct a trial because the Agreement was ambiguous on its face and evidence produced during discovery raised genuine issues of material fact. After hearing arguments on the motion, the circuit court entered an order

3

on February 27, 2018, in which it (i) vacated its January 10, 2018 opinion letter and February 8, 2018 judgment order, (ii) denied Futuri's motion for reconsideration, stating that the discovery material did not raise "genuine and relevant issues of fact materially in dispute," (iii) incorporated a new opinion letter dated February 27, 2018, and (iv) dismissed Futuri's cross-claim and request for declaratory judgment with prejudice. This appeal followed.[2]

ANALYSIS

In its first assignment of error, Futuri argues that the circuit court should have adopted the complete subordination rule of construction because it is a simpler, more straightforward interpretation of recorded instruments, thereby enhancing reliability on such instruments.

The complete subordination rule relies primarily on the definition of the term "subordination," which contemplates a reduction, not an elevation in priority. It provides that in the absence of any language in the subordination agreement to the contrary, a lienholder "who holds a first lien and subordinates it to a third lien makes his lien inferior or subordinate to both the second and third liens." *McConnell v. Mortgage Investment Co. of El Paso,* 292 S.W.2d 636, 638 (Tex. Civ. App. 1955), *aff'd*, 305 S.W.2d 280, 282 (Tex. 1957) (citing *Shaddix v. National Surety Co.,* 128 So. 220, 224 (Ala. 1930)); *see also AmSouth Bank, N.A. v. J & D Financial Corp.,* 679 So.2d 695, 698 (Ala. 1996). Thus, under a complete subordination, where A is the senior lienholder, B the second lienholder, and C the third, and A subordinates its lien to C, it would move B into the first place priority.

---

[2] Futuri's original appeal to this Court was dismissed without prejudice for lack of a final appealable order. The trial court entered a subsequent order on August 24, 2018 disposing of not only Wells Fargo's motion to dismiss and Futuri's cross-claim against Wells Fargo, but also Futuri's counter-claim against Atlantic Trustee Services, LLC, Futuri's third-party claim against SunTrust and TRSTE, Inc., and denying Futuri's motion to nonsuit its counter-claim against Atlantic Trustee Services, LLC. Atlantic Trustee Services, LLC filed a brief in this appeal stating it was a nominal party without interest and would not present argument.

4

The partial subordination rule begins with the basic rule of contract construction that a contract is to be interpreted to enforce the intent of the parties. *Bratcher v. Buckner,* 90 Cal. App. 4th 1177, 1186 (2001) (citation omitted). A partial subordination exists if the terms of the subordination agreement clearly intend to affect only the priority of the liens held by the parties to the agreement and if it does not affect the priority status of any intervening or other lienholders. *Id.; see also Price Waterhouse,* 46 P.3d at 410-11; *Tomar Development, Inc. v. Friend,* 410 P.3d 578, 582 (Col. 2015); *ITT Diversified Credit,* 737 S.W.2d at 804; *VCS, Inc. v. Countrywide Home Loans, Inc.,* 349 P.3d 704, 711 (Utah 2015); and *Neilsen,* 100 Cal. Rptr. 3d at 556-57. The partial subordination rule results in a circuity of liens in which each lien is simultaneously prior and subordinate to the other. *Bratcher*, 90 Cal. App. 4th at 1185-186. For example, where A is the senior lienholder, B the second lienholder and C the third, and A subordinates its lien to C, limited to the amount of A's lien, C becomes senior to A but remains junior to B and A remains senior to B but becomes junior to C to the amount subordinated not exceeding the amount of A's lien. *Id.* The formula applied to resolve this legal puzzle in a foreclosure situation was first expressed by the Texas Supreme Court in *ITT Diversified Credit, supra.* In *ITT Diversified Credit,* A, B, and C each had liens against the debtor, with their respective priority status in the same alphabetical order. A subordinated its lien to C. After foreclosure of the secured interest, the resulting fund was insufficient to satisfy all three claims and the Texas Supreme Court explained that the proper distribution of the fund would be as follows:

1. Set aside from the fund the amount of ['A's'] claim.
2. Out of the money set aside, pay 'C' the amount of its claim, pay 'A' to the extent of any balance remaining after ['C's'] claim is satisfied.
3. Pay 'B' the amount of the fund remaining after ['A's'] claim has been set aside.
4. If any balance remains in the fund after ['A's'] claim has been set aside and ['B's'] claim has been satisfied, distribute the balance to 'C' and 'A.'

Thus 'C,' by virtue of the subordination agreement, is paid first, but only to the amount of ['A's'] claim, to which 'B' was in any event junior. 'B' receives what it expected to receive, the fund less ['A's'] prior claim. If ['A's'] claim is smaller than ['C's'], 'C' will collect the balance of its claim, in its own right, only after 'B' has been paid in full. 'A,' the subordinator, receives nothing until 'B' and 'C' have been paid except to the extent that its claim, entitled to first priority, exceeds the amount of ['C's'] claim, which under its agreement is to be first paid.

*Id.* at 804.[3]

Based on our review of the relevant case law and consideration of our jurisprudence, we agree with the circuit court that the partial subordination rule is the better rule. Although the complete subordination rule may be simpler and more straightforward, it deviates from Virginia law. As noted in cases addressing this issue, the complete subordination rule results in raising the priority of intervening lienholders, thereby making them third-party beneficiaries to an agreement in which they are not even mentioned, and giving them a windfall of being placed in first priority position to the subordinating lienholders. *See, e.g., AmSouth Bank,* 679 So.2d 695; *Old Stone Mortg. Realty Trust v. New Georgia Plumbing, Inc.,* 236 S.E.2d 592 (Ga. 1977); *Blickenstaff v. Clegg*, 97 P.3d 439 (Id. 2004). This result is inconsistent with Virginia law, which requires a contract to clearly intend persons or entities to be third-party beneficiaries of the contract to qualify as such. *Copenhaver v. Rogers,* 238 Va. 361, 367 (1989). Furthermore, application of the complete subordination rule necessarily impacts the priority position of intervening lienholders. Thus, in construing a subordination agreement, the complete subordination rule incorporates an inference that the contracting parties intended to affect

---

[3] We note that this example assumes foreclosure by A, the senior lienholder. Indeed, virtually all examples of the partial subordination rule of construction are based on foreclosure by the senior lienholder. Neither we nor counsel could identify any case involving application of this formula when the security foreclosed was due to default on a junior lien. Nevertheless, application of partial subordination is not dependent on which lien is the subject of the foreclosure.

6

lienholders who are not a party to the agreement, notwithstanding that such intent is not contained in the language of the agreement.

In contrast, under the partial subordination rule, the intent of the contracting parties is ascertained strictly from the language on the face of their subordination agreement. Thus, where only the subordinating lienholder and the junior lienholder are referenced in the agreement, it demonstrates an intent to affect the priority positions of those lienholders only. The status of the intervening lienholder does not change and is not prejudiced in any way because the intervening lienholder was always subject to the amount of the senior lien. The manner in which the proceeds of the foreclosure sale satisfying the senior lien are disbursed has no effect on the intervening lienholder. Furthermore, it is a common commercial lending practice for a borrower to seek additional funds to grow his enterprise and thereby satisfy outstanding liens. Lenders in this situation often require a senior lienholder to subordinate to the new loan before the new lender will agree to loan more money to such borrower who offers the same collateral or security for the new loan. *Duraflex Sales & Service Corp. v. W.H.E. Mechanical Contractors*, 110 F.3d 927, 934-36 (2nd Cir. 1997); *see also* George A. Nation, III, "Circuity of Liens Arising from Subordination Agreements: Comforting Unanimity No More," 83 B.U.L. Rev. 591, 592 (2003) (discussing the mechanics of subordination agreements).

In this case, the circuit court found that the Agreement on its face addressed only the priority between the two Wells Fargo liens, was not intended to and did not affect the priority of any other lienholder, and therefore was a partial subordination agreement. We agree and, for the reasons expressed, affirm the judgment of the circuit court adopting the partial subordination rule and reject Futuri's first assignment of error.

Following its determination that the partial subordination rule should be used in construing the Agreement, the circuit court proceeded to apply that rule to the disposition of the foreclosure fund remaining in this case. Futuri has not assigned error to the manner in which the circuit court directed distribution of the remaining fund and therefore that disposition has become the law of the case. *Kondaurov v. Kerdasha,* 271 Va. 646, 658 (2006). Accordingly, in affirming the circuit court's judgment adopting the partial subordination rule and dismissing Futuri's cross-claim, we express no opinion on the circuit court's disposition of the remaining fund in this case.

Futuri also assigns error to the circuit court's finding that the Agreement was not ambiguous. Futuri argues that the Agreement was ambiguous on its face because it was silent as to the treatment of other liens and therefore the circuit court should have considered parol evidence. We disagree. As the circuit court held, and we concur, the Agreement on its face clearly addressed and was intended to address only the priority status between the two Wells Fargo loans. The failure to address the priority status of the SunTrust loan relative to the Wells Fargo loans did not make the Agreement ambiguous. Thus, we reject Futuri's second assignment of error and argument that the circuit court should have resorted to parol evidence to determine the intent of the Agreement.

CONCLUSION

For the reasons stated, we affirm the judgment of the circuit court adopting the partial subordination rule to construe the Subordination Agreement in this case, determining that the Agreement was not ambiguous and dismissing Futuri's cross-claim with prejudice.

*Affirmed and*
*final judgment.*

8